NICHOLAS BARRASSO & another[1] *vs.* HILLVIEW WEST
CONDOMINIUM TRUST & others.[2]

No. 07-P-1057.

Essex. June 4, 2008. - April 21, 2009.

Present: KANTROWITZ, KATZMANN, & RUBIN, JJ.

*Negligence,* Condominium trust, Snow and ice. *Snow and Ice. Condominiums,*
Common area.

In a civil action arising out of the plaintiff's slip and fall on an accumulation
of snow and ice while attempting to deposit his trash into a dumpster at his
condominium complex, the judge erred in granting summary judgment in
favor of the defendants (the condominium trust, the trust's property manager,
and the landscaping firm responsible for the snow plowing at the
condominium complex), where a genuine issue of material fact existed
whether the accumulation of snow and ice on which the plaintiff fell was
unnatural. [137-139] KANTROWITZ, J., concurring.

CIVIL ACTION commenced in the Superior Court Department on
April 18, 2003.

The case was heard by *Patrick J. Riley,* J., on motions for
summary judgment.

*Christian G. Samito* for the plaintiffs.

*Robert J. Gizmunt* for Hillview West Condominium Trust &
another.

*Richard E. Heifetz* for Environmental Landscape Manage-
ment, Inc.

RUBIN, J. On the morning of March 8, 2001, the plaintiff,
Nicholas Barrasso, slipped and fell on an accumulation of snow
and ice while attempting to deposit his trash into a dumpster at
his condominium complex, Hillview West Condominium, fractur-
ing his left wrist. Barrasso filed a complaint, on April 18, 2003,

[1] Gail Barrasso.

[2] Richard LeBranti and Environmental Landscape Management, Inc.

alleging negligence against defendants Hillview West Condominium Trust (Hillview); Hillview's property manager, Richard LeBranti; and the landscaping firm responsible for the snow plowing at the complex, Environmental Landscape Management, Inc. (ELM). Barrasso's wife, the plaintiff Gail Barrasso, brought a claim for loss of consortium.

On March 30, 2005, the trial judge granted the defendants' motions for summary judgment, ruling that there was no genuine issue of material fact as "[t]here was a natural accumulation of snow and ice in existence at the time of the plaintiff's injury." The Barrassos appeal the grant of summary judgment in favor of the defendants.

*Facts.* We summarize the facts from the record on summary judgment. On March 5, 2001, a major snowstorm hit the northeast, resulting in the declaration of a two-day state of emergency which lasted throughout March 6 and 7. It snowed continuously from the beginning of the storm through March 7, with the total accumulation reaching approximately sixteen inches.

Pursuant to a contract with Hillview, ELM began to plow snow at the complex on the afternoon of March 6 and continued to do so, during both day and night, at least through the night of March 7. On March 8, Barrasso was due at work at 8:00 A.M. At approximately 7:20 A.M., before leaving for work after having had the prior two days off apparently due to the snow emergency, Barrasso attempted to deposit some trash into the dumpster that was located in the parking lot of the condominium. The snow had stopped, and the parking lot had already been plowed. As Barrasso walked towards the dumpster, he noticed that there was a light dusting of freshly fallen snow on the ground. Barrasso then saw that the front of the dumpster was blocked by an accumulation of snow that ELM's plows had pushed up against it. The plow-created snowbank or embankment was approximately three feet wide, waist-deep, and covered the entire length of the dumpster, which was surrounded on the back and sides by a stockade fence. Barrasso had on occasions in the past confronted a similar problem where the area in front of the dumpster had not been cleared out for access, and, indeed, had complained at least once within the previous year to Hillview and LeBranti about it. There was no evidence that Barrasso expected any further snow removal efforts that day.

Because of the location of the embankment, Barrasso had to step through it in order to deposit his trash through a sliding door on the side of the dumpster. He stated that he took three steps over the snowbank and on his fourth step his right foot was coming down toward the bottom of the mound when it hit a "large piece" of "hardened compacted snow and ice," causing him to slip and fall. He put his left hand down to brace the fall and fractured his wrist. As a result of his injury Barrasso was unable to return to his job as a lithographer for five months.

*Standard of review.* We review the allowance of a motion for summary judgment de novo. See *Miller* v. *Cotter,* 448 Mass. 671, 676 (2007). Summary judgment is properly granted only where there is no genuine issue of material fact and where, viewing the evidence in the light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. See Mass.R. Civ.P. 56(c), as amended, 436 Mass. 1404 (2002).

*Discussion.* A landowner has an affirmative duty of reasonable care under the circumstances to prevent injuries to those who are lawfully on the landowner's premises. *Mounsey* v. *Ellard,* 363 Mass. 693, 707-708 (1973). Massachusetts law does not, however, "regard the natural accumulation of snow and ice as an actionable property defect." *Aylward* v. *McCloskey,* 412 Mass. 77, 79 (1992), citing *Athas* v. *United States,* 904 F.2d 79, 82 (1st Cir. 1990). The seminal case in this area is *Sullivan* v. *Brookline,* 416 Mass. 825, 827 (1994). There, town employees shoveled snow off a ramp leading to a health center, leaving exposed a layer of ice that had been underneath, on which the plaintiff slipped and fell. *Id.* at 826-827. The court held that there was no liability because the plaintiff had not shown that the town in any way created the ice or altered its condition. Rather, the ice was merely a natural accumulation that remained after the town removed the snow. *Id.* at 827-828.

*Sullivan* explains that an unnatural accumulation occurs and gives rise to a claim for damages where "an act or omission by the [defendant] changed the condition" of snow and ice "from its natural state." *Id.* at 830. With respect to snow removal efforts, it distinguishes between, on the one hand, "creat[ion]" of and "alter[ation]" of conditions, which are actionable; and on the other hand, mere exposure of a remaining natural accumulation

of snow or ice, which is not actionable. See *id.* 827-828. See also *Aylward, supra* at 80 n.3 (liability will arise where "some act or failure to act has changed the condition of naturally accumulated snow and ice, and the elements alone or in connection with the land become a hazard to lawful visitors").

The only question before us is whether there was sufficient evidence to raise a genuine issue of material fact whether what Barrasso slipped on was an "unnatural accumulation" of snow and ice rather than a "natural accumulation." The plaintiffs' proffered evidence raised a genuine issue concerning that question.

It is undisputed that the snowbank into which Barrasso stepped did not accumulate naturally, but was created by a snowplow pushing snow against a dumpster. Barrasso's testimony that his foot hit a large piece of "hardened compacted snow and ice together," which he also described as a "compressed, large piece of snow and ice," is sufficient at least to raise a genuine issue of material fact whether that compressed piece of snow and ice was created by the plow. Even if the movement of naturally accumulated snow into a snowbank by a plow still left it a "natural accumulation" — and that would not be an ordinary usage of the word "natural" — we conclude that under any reasonable interpretation, when snow is compacted by a plow it is not a "natural accumulation" within the meaning of the relevant cases.[3]

The law of the Commonwealth recognizes that snow falls in Massachusetts and that it is no person's fault. See *Aylward, supra* at 80, quoting from *Collins* v. *Collins*, 301 Mass. 151, 152 (1938) ("[i]t is common knowledge that in this climate . . . a number of conditions might exist which within a very short time could cause the formation of ice . . . without fault of the owner and without reasonable opportunity on his part to remove it or warn against it or even to ascertain its presence"). But the law does not immunize from the requirement to take reasonable care those who, while removing snow, create conditions on their property that may be dangerous. See *Aylward, supra* at 80 n.3 ("in circumstances where some act or failure to act has changed the condition of naturally accumulated snow

---

[3]We thus need not address the plaintiffs' alternative argument, that there is a genuine issue as to whether the embankment became an unnatural accumulation because of the period of time that it remained against the dumpster.

and ice . . . then a defect may exist, creating liability in the owner or occupier").[4]

The defendants' motions for summary judgment should not have been granted. The judgment therefore is reversed, and the case remanded for further proceedings consistent with this opinion.

*So ordered.*

KANTROWITZ, J., concurring. If the issue had been properly presented below, the defendants, in my view, would prevail. As it was neither presented, nor argued,[1] I feel constrained to concur. See *Bongaards* v. *Millen,* 440 Mass. 10, 28 (2003).

The record reveals that a major snowstorm hit New England. It snowed continuously for a few days, dumping sixteen inches of snow. The snow plowing company, Environmental Landscape Management, Inc. (ELM), worked around the clock, trying to remove the snow.[2] While ELM plowed the parking lot adjacent to the building where the plaintiff lived, some snow wound up plowed against a dumpster. The plaintiff decided to climb over

_____

[4]As the concurrence indicates, the defendants did not seek summary judgment, nor do they argue for affirmance, on the basis that the defect was an "open and obvious danger." Because that issue has not been raised, we express no opinion about the applicability or contours of the open and obvious danger doctrine with respect to a defendant's duty to refrain from creating a danger or his or her duty to remedy it. Cf. *O'Sullivan* v. *Shaw,* 431 Mass. 201, 206 (2000) (involving the duty to warn); *Quinn* v. *Morganelli,* 73 Mass. App. Ct. 50, 55 (2008) (addressing the duty to remedy). Nor do we express any opinion as to whether the ice on which Barrasso alleges he slipped or the snowbank in which it was hidden was an open and obvious danger, whether Barrasso's conduct was foreseeable, or whether there is a genuine issue of material fact with respect to either question.

[1]Richard LeBranti and Hillview West Condominium Trust write in their brief that the judge in *Lopes* v. *SSB Realty, Inc.,* 64 Mass. App. Ct. 1110 (2005), "further ruled that [the snow ridge] was an open and obvious defect . . . ." This passing reference to the "open and obvious defect" doctrine (with a citation to an unpublished memorandum and order, no less) is insufficient to raise the issue on appeal.

[2]As was customary, ELM followed a procedure for snow removal that included clearing the roads and parking lots first, walkways second, and other common areas such as the dumpster third. This procedure sometimes took a full day to complete after a snowstorm had ended.

the three feet of snow obviously piled in front of the dumpster to dump a bag of garbage, and fell.

Putting aside the issues whether the accumulation was natural or not, as well as what more the defendants could have reasonably done under the circumstances, see *Mounsey* v. *Ellard*, 363 Mass. 693, 707-708 (1973), the basic question to be addressed is a simple one. Did the defendants owe the plaintiff a duty to refrain from creating the snowbank or to remedy what they had created? See *Davis* v. *Westwood Group*, 420 Mass. 739, 742 (1995) ("Before liability for negligence can be imposed, there must first be a legal duty owed by the defendant to the plaintiff").

The duty to protect lawful visitors against dangerous conditions on the property "ordinarily does not extend to dangers that would be obvious to persons of average intelligence." *O'Sullivan* v. *Shaw*, 431 Mass. 201, 204 (2000). See *Quinn* v. *Morganelli*, 73 Mass. App. Ct. 50, 54-55 (2008). Several facts suggest that the danger of climbing over such a snowbank immediately after a major snowstorm was an obvious one to persons of average intelligence. For example, the large pile of snow was waist high, three feet wide, and stretched the entire length of the front of the dumpster. It was daylight when the plaintiff fell, and the snowbank was obvious to all, including the plaintiff. See *O'Sullivan* v. *Shaw*, 431 Mass. at 211 ("danger of diving into the shallow end of a swimming pool is open and obvious"); *Barnett* v. *Lynn*, 433 Mass. 662, 666 (2001) ("danger of sledding down the snow-covered stairs was open and obvious").

While the record does not indicate whether the plaintiff had to dispose of his small, supermarket-sized plastic bag in that dumpster at that time and, if so, whether the defendants could have foreseen the plaintiff's actions,[3] see Restatement (Second) of Torts § 343A, comment f (1965) (duty may exist if a landowner has reason to expect that the individual has no choice but to encounter the open and obvious danger), that answer also seems readily apparent.

[3]The record reveals that the plaintiff normally deposited trash two to three times per week and that he had not taken out the trash for at least two days. The record does not indicate whether he could have disposed of the trash somewhere else or could have waited until the snowbank was cleared by 10:00 A.M.

In sum, as the issue whether the defendants had a duty to refrain from creating the snowbank or a duty to remedy the snowbank was not properly raised below, it would be unfair, if not unwise, for us to resolve this case on that ground. While it is difficult to imagine how, once raised, it would not prove successful, I leave that for another day.[4]

---

[4]I recognize that had the issue been raised, perhaps the summary judgment record would have looked different.