Soederberg *v.* Concord Greene Condominium Association.

SELENA SOEDERBERG *vs.* CONCORD GREENE CONDOMINIUM
ASSOCIATION & another.[1]

No. 09-P-380.

Middlesex. December 14, 2009. - February 25, 2010.

Present: COHEN, SMITH, & MILKEY, JJ.

*Negligence,* Snow and ice, Standard of care, One owning or controlling real
estate. *Snow and Ice. Practice, Civil,* Instructions to jury. *Words,* "Open
and obvious danger."

In a civil action for damages arising from injuries that the plaintiff sustained
when she fell while trying to traverse an area of frozen slush at the
condominium complex where she lived, the judge erred in instructing the
jury to determine, as a threshold liability question, whether the dangers
posed were open and obvious, as the open and obvious danger rule does
not operate to negate a landowner's duty to remedy hazardous conditions
resulting from unnatural accumulations of ice and snow, at least where, as
here, those hazards lay in a known path of travel; further, although the
judge, by directing the jury to consider whether the plaintiff had a reason-
able alternative to traversing the area, provided the plaintiff with a more
forgiving standard than strict application of the open and obvious danger
rule, the judge's hybrid approach was not dispositive of the defendant's li-
ability as a matter of law. [336-340]

CIVIL ACTION commenced in the Superior Court Department on
July 14, 2005.

The case was tried before *Thayer Fremont-Smith,* J., and a
motion for a new trial, filed on June 23, 2008, was heard by
him.

*Christopher J. Trombetta* for the plaintiff.

*James T. Scamby* for the defendants.

---

[1]Emerald Isle Landscaping, Inc., the company that was contracted to remove
snow and ice at the condominium complex. Although Emerald Isle nominally
participated in the appeal, the jury separately found it not negligent, and judg-
ment entered accordingly. The plaintiff's brief did not challenge that part of
the judgment, and we deem any appeal therefrom waived. Mass.R.A.P. 16(a)(4),
367 Mass. 921 (1975).

MILKEY, J. On February 5, 2005, the plaintiff was seriously injured when she fell while trying to traverse an area of frozen slush at the condominium complex where she lived. She filed a negligence action against the condominium association that owned the complex (the owner). After trial in Superior Court, the jury returned a special verdict that found that the ice hazard was open and obvious and that the plaintiff had a reasonable alternative to walking across it. On that basis, the judge entered judgment absolving the owner of liability. At issue on appeal is the correctness of the judge's instructions regarding the open and obvious danger rule, and of the special verdict form that incorporated those instructions. Because we conclude that the judge improperly applied the open and obvious danger rule to the owner's duty to remedy the hazard, we reverse.

*Background.* In October of 2004, the plaintiff, a seventy-four year old retiree, moved into a condominium unit at the Concord Greene Condominium complex in Concord. The following January, the Concord area experienced significant snowfall, and it snowed again on February 3 and 4. Sometime between 9:00 and 10:00 on the morning of February 5, 2005, a Saturday, the plaintiff left her unit to travel to a local arts center where she regularly pursued her avid interest in sculpting. To get to her car, she walked down the walkway to the parking lot. The walkway itself had been cleared of snow and ice, as had much of the parking lot. In the area where the walkway joined the parking lot, however, the plaintiff encountered frozen slush with deep footprints.[2] According to her own testimony, she recognized the danger and knew that she "had to be especially careful." Seeing that "it was just a few more steps" before she "got out of the danger zone," she concluded that she could navigate the patch safely if she used care. Despite these aspirations, she fell and broke her hip.[3]

The plaintiff testified that there was no alternative route to

---

[2]Multiple witnesses testified that snow plows could not reach this area because of a parked vehicle.

[3]According to her testimony, the broken hip permanently affected her mobility, caused her long-term pain, led to two major hip surgeries and $200,000 in medical bills, and otherwise affected her health and well-being. The owner actively contested the extent to which the plaintiff's alleged injuries were attributable to the fall, and pointed out that she had a host of health problems unrelated to it.

her car. On cross-examination, defense counsel attempted to elicit from her that she in fact could have bypassed the icy area, suggesting a specific alternative route. The plaintiff testified that she could not have taken that route without climbing over "a pile of snow."

The owner also suggested that the plaintiff could have returned to her unit and called the twenty-four hour number listed in the tenant handbook. The handbook did not have a section specific to snow and ice removal. It did, however, generally instruct that when the complex office was closed, as it is on weekends, "the phone is answered by an answering service that will reach maintenance personnel in an emergency [and m]aintenance personnel can be reached for immediate availability."[4] The plaintiff acknowledged that she had a copy of the tenant handbook in her possession and that she had consulted it for other purposes when she first moved into the complex. She testified that when she encountered the icy area at the end of the walkway, it did not "dawn on" her to return to her unit to look in her tenant handbook and call for emergency assistance.

The case was presented to the jury on special questions. The parties agreed that the first question the jury should address was whether "the substance upon which plaintiff fell [was] an unnatural accumulation of snow or ice," with a verdict to return in the owner's favor if the jury answered that question in the negative. They hotly contested which questions should follow. The owner argued that the jury should turn immediately to whether any ice hazards were open and obvious, and that the judge should enter judgment in its favor if the jury answered that question in the affirmative. The plaintiff countered that the extent to which the ice hazard was open and obvious went only to the plaintiff's comparative negligence and did not relieve the owner of its duty of care.

Agreeing with the owner, the judge adopted question number two on the special verdict form that asked whether "the danger-

---

[4]Although there was testimony that maintenance personnel could be reached within "seconds" through the answering service, there was no testimony or other evidence on how long it would have taken such personnel to come address the problem. In its closing argument, the owner nevertheless argued — without protest — that, had the plaintiff called, people could have come out to the site to fix the problem in "20 minutes."

ous nature of the accumulation [was] open and obvious." However, after the owner's closing argument, but before the plaintiff made her closing argument, the judge had a partial change of heart. He decided that if the jury concluded that the dangers were open and obvious, the jury would not automatically return the verdict in the owner's favor, but that the jury should then consider a new question number three: "Did the plaintiff have any reasonable alternative to traversing the frozen ice or snow area?" If the jury determined that the plaintiff did have a reasonable alternative, the jury verdict would return in the owner's favor. Both parties expressed their unhappiness with this compromise and preserved their objections to it.

After the judge charged the jury in this manner and the jury began its deliberations, they requested clarification regarding the meaning of question number three. Specifically, the jury inquired, "Is making a phone call to maintenance considered a reasonable alternative?" The judge answered that this was for the jury to decide.

As demonstrated by their answers on the special verdict form, the jury determined that the plaintiff fell on an "unnatural" accumulation of snow or ice, that the dangerous nature of the accumulation was open and obvious, and that the plaintiff had a "reasonable alternative to traversing the frozen ice or snow area." Consistent with the judge's instructions, the jury did not address the owner's potential liability further. Thus, the jury did not assess whether the owner was negligent or whether the owner's negligence was a substantial contributing cause of the plaintiff's injuries. The judge entered judgment in favor of the owner.

*Discussion.* A property owner "owes a common-law duty of reasonable care to all persons lawfully on the premises." *O'Sullivan* v. *Shaw,* 431 Mass. 201, 204 (2000). "This duty includes an obligation to 'maintain[] his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk.' " *Ibid.,* quoting from *Mounsey* v. *Ellard,* 363 Mass. 693, 708 (1973). A property owner's duty to maintain his property in a reasonably safe condition extends to remedying hazards caused by "unnatural" accumulations of snow or ice.[5]

---

[5]The Supreme Judicial Court has pending before it a case that raises the

See, e.g., *Sullivan* v. *Brookline*, 416 Mass. 825, 827 (1994). Courts have long recognized this duty despite the fact that unnatural snow or ice hazards are readily apparent, as has often been noted. For example, as the Supreme Judicial Court observed over a century ago:

> "It is hard to conceive of anything more universally known to be plainly liable to cause a person to slip than ice, yet it has not infrequently been held that knowledge of the presence of ice on the part of one attempting to pass over it, sometimes even when there is another way open, is not such evidence of negligence as to warrant the court in ruling as a matter of law that the person injured by the attempt to get over the slippery place is precluded from recovery by negligence."

*Frost* v. *McCarthy*, 200 Mass. 445, 448 (1909).

As this quote recognizes, even prior to the amendments to G. L. c. 231, § 85, that incorporated the adoption of comparative negligence (see St. 1969, c. 761, § 1), and the later abolition of the defense of assumption of the risk (see St. 1973, c. 1123, § 1), the Supreme Judicial Court had emphasized that whether a plaintiff's own conduct in encountering an ice hazard should bar recovery was generally a question for the jury to decide. See *Baldassari* v. *Produce Terminal Realty Corp.*, 361 Mass. 738, 744-745 (1972) (case should have gone to the jury despite the fact that plaintiff acknowledged that he "took a chance" in crossing an ice hazard). This principle applied even where a plaintiff had options available to her through which she could have avoided the ice hazard. See *Silver* v. *Cushner*, 300 Mass. 583, 587-588 (1938).[6]

---

question whether the distinction between "natural" and "unnatural" accumulations of snow or ice should be revisited. *Papadopoulos* v. *Target Corp.*, 74 Mass. App. Ct. 1104 (2009), further appellate review granted, 454 Mass. 1108 (2009).

[6] In *Silver* v. *Cushner, supra* at 586-587, the plaintiff saw ice on the stairs but proceeded down them. The court concluded as follows: "[T]here [was] nothing in this evidence to show that the plaintiff was negligent . . . unless on the ground that she should not have attempted to use the steps in the slippery condition shown, but should have used another available means of egress or should have put ashes or salt on the steps . . . . The plaintiff was using the steps as contemplated . . . ." *Id.* at 587.

No reported Massachusetts case has held that the obviousness of the dangers posed by the hazards of an unnatural accumulation of snow or ice negates an owner's duty to remedy the hazard.[7] Despite this, the owner argues that the open and obvious danger rule is a generally applicable principle and that there is no good reason not to apply it to ice hazards of the sort at issue here. We disagree. We first address background principles and then turn to the propriety of the judge's specific course of action.

The Restatement recognizes that a property owner or possessor should not be relieved from remedying open and obvious dangers where he "can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger." Restatement (Second) of Torts § 343A comment f, at 220 (1965). We recently expressed support for this principle, and we noted that the Supreme Judicial Court has cited Restatement comment f with apparent approval. See *Quinn* v. *Morganelli*, 73 Mass. App. Ct. 50, 55 & n.7 (2008), citing *Ferris* v. *Monsanto Co.*, 380 Mass. 694, 704 n.8 (1980) (Kaplan, J.). We noted that allowing a plaintiff in appropriate circumstances to recover for reasonably foreseeable injuries caused by open and obvious dangers is "most in harmony with basic principles of tort law." *Quinn, supra* at 55.

As the Restatement further recognizes, one of the specific circumstances where harm to others is foreseeable is "where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." Restatement (Second) of Torts § 343A comment f, at 220. Our case law is replete with examples of people who, upon encountering snow or ice hazards, nevertheless continued to venture forward in the belief that they could do so

---

[7]The owner endeavors to rely upon the concurring opinion to *Barrasso* v. *Hillview West Condominium Trust*, 74 Mass. App. Ct. 135, 140 (2009) (Kantrowitz, J., concurring), which suggested that, had the defendants in that case raised the open and obvious danger doctrine, it would have been relevant to the defendants' duty to remedy (or refrain from creating) the snow bank on which the plaintiff fell. However, because the defendants in *Barrasso* never raised such an argument, the issue, and the significance of prior case law such as *Frost* v. *McCarthy, supra*, was not addressed or decided. 74 Mass. App. Ct. at 139 n.4.

safely if they proceeded with care. See, e.g., *Dewire* v. *Bailey*, 131 Mass. 169, 169-170 (1881); *Dipper* v. *Milford*, 167 Mass. 555, 557 (1897); *Silver* v. *Cushner*, *supra* at 586-587; *Sullivan* v. *Brookline*, *supra* at 827; *Barrasso* v. *Hillview W. Condominium Trust*, 74 Mass. App. Ct. 135, 136-137 (2009). These examples demonstrate that it is entirely foreseeable that people will engage snow or ice hazards lying in well-traveled pathways, even if those hazards are open and obvious.

That being the case, we conclude that the open and obvious danger rule does not operate to negate a landowner's duty to remedy hazardous conditions resulting from unnatural accumulations of ice and snow, at least where, as here, those hazards lie in a known path of travel. Therefore, the jury should not have been asked to determine, as a threshold liability question, whether the dangers posed here were open and obvious. Of course, the reasonableness of the plaintiff encountering the hazard, despite its obviousness, may be considered by the jury insofar as it relates to the issue of comparative negligence. See G. L. c. 231, § 85; *O'Sullivan* v. *Shaw*, 431 Mass. at 210 n.3 ("[w]hether a particular plaintiff knew of and appreciated the danger of a condition on the defendant's property . . . appears to belong to an analysis of the plaintiff's reasonableness in proceeding to confront that hazard; that is, it goes to the extent of the plaintiff's contributory fault for his own injuries, and is therefore a question of fact properly reserved for the trier of fact applying principles of comparative negligence").

Having concluded that the open and obvious danger rule does not operate to negate the defendant's duty of care, we still must address the propriety of the hybrid approach employed here. By directing the jury to consider whether the plaintiff had a reasonable alternative, the judge provided the plaintiff with a more forgiving standard than strict application of the open and obvious danger rule. However, even though the jury were persuaded that the plaintiff elected to proceed despite having a reasonable alternative to encountering a known hazard, this was not dispositive of the defendant's liability as a matter of law. It remained for the jury to determine whether the defendant was negligent, whether that negligence was a proximate cause of the plaintiff's injuries, whether any negligence of the plaintiff in crossing the

snow and ice was a substantial contributing factor, and, if so, to determine the parties' relative percentages of fault.

*Conclusion.* The judgment is reversed, the jury verdict is set aside, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*