Macdonald, D. Lloyd, J.
This is a wrongful death action brought by the parents of Molly Ferguson Shattuck, a 19-year-old freshman at Boston University, who in the early hours of February 9, 2005 was *289 killed when she was struck by an MBTA commuter rail train while walking with a friend on the tracks located in what is referred to as “Beacon Yards,” adjacent to the university campus. The defendants are the Trustees of Boston University (hereinafter, “BU”), the President and Fellows of Harvard College and the Harvard University Beacon Yards, LLC (collectively, “Harvard”), CSX Transportation, Inc. (“CSX”), the Massachusetts Bay Transportation Authority and the Massachusetts Bay Commuter Railroad Company, LLC (collectively, the “MBTA”) and the Massachusetts Turnpike Authority (the “Turnpike Authority”). In addition, there are seven individual defendants who are associated in various capacities with BU, Harvard and the MBTA. Except with regard to BU, where there is a contract count, the plaintiffs’ claims are based in tort. Previously, Judge Giles of this court allowed the summary judgment motion of the Turnpike Authority (Paper #126). Currently before the Court are the motions for summary judgment of the remaining defendants.
The Court ALLOWS all the motions for the reasons that follow.
Pertinent Facts
Molly Ferguson Shattuck (“Molly”), as noted, was a 19-year-old freshman at BU on the day of the accident. The BU campus stretches along the southerly bank of the Charles River, bordered by Storrow Drive on BU’s easterly extension and by the Beacon Yards (“Beacon Yards” or the “Yards”) on its westerly extension.
Beacon Yards is a large railroad switching and storage yard comprised of approximately twenty parallel (and ultimately intersecting) railroad tracks and ancillary structures. It extends for approximately a mile along (and, to the West, beyond) the northerly side of the BU campus. On the southerly side of Beacon Yards runs a single track of the Framingham-Worces-ter-Boston, so-called, “Main Line,” over which the MBTA runs its commuter rail service to the western suburbs and points further West. Molly’s dorm room, in a BU high-rise, overlooked the Yards.
In 2003 Harvard purchased the fee interest in the Yards from the Turnpike Authority. At all times material to the complaint, Harvard’s and the Turnpike Authority’s ownership of the Yards was subject to a perpetual exclusive easement to the benefit of CSX. Although it is not material to the Court’s decision, CSX appears to have controlled the Yards subject to Harvard’s and the Turnpike Authority’s ownership of the fee and the MBTA’s use of the Main Line.
Shortly after midnight on February 9, 2005, Molly was texting with a fellow BU student, Andrew Voluck (“Andrew”). In the course of their exchange, they communicated about getting together outside of their respective dorm rooms for a break in the open air. Andrew asked Molly whether she had “ever been to the train tracks?” Molly responded that she had not. In response to Andrew’s subsequent invitation, she agreed to take a walk there. When she did, Andrew noted, “It’s kinda scaiy down ther[e].”
The parties assume for purposes of the motion that Molly and Andrew accessed the yards through a hole in the fence that surrounded the Yards at either of two locations near Molly’s dorm. Once in the yards, they walked easterly toward downtown Boston on the “gauge,” i.e., between the tracks on, the Main Line. As they were doing so, they were struck from behind by an MBTA commuter train and killed.
Discussion
The filings in this case are voluminous, and the plaintiffs have multiple well-presented and argued theories of liability as to each defendant. However, despite all the permutations of such theories, at the threshold the plaintiffs have an insuperable problem. That problem is that none of the defendants owed a duty of care to Molly and Andrew because of the open and obvious nature of the risk posed to any sensate person entering the Beacon Yards at night.[1]
“Landowners are relieved of the duty to warn of open and obvious dangers on their premises because it is not reasonably foreseeable that a visitor exercising (as the law presumes) reasonable care for his own safety would suffer injury from such blatant hazards. Stated otherwise, where a danger would be obvious to a person of ordinary perception and judgment, a landowner may reasonably assume that a visitor has knowledge of it and, therefore, ‘any further warning would be an empty form’ that would not reduce the likelihood of resulting harm.” O’Sullivan v. Shaw, 431 Mass. 201, 204 (2000) (danger of diving headfirst into shallow end of swimming pool was open and obvious) (citations omitted).
Where a dangerously open and obvious condition exists, “(p]lain common sense, bolstered by the weight of authority in other jurisdictions where this issue has been addressed, convince us that [there is ordinarily no duty to warn or take other preventive measures to reduce the risk posed].” Id. at 207. See also Barnett v. City of Lynn, 433 Mass. 662, 667 (2001) (“Common sense dictates that the danger of sledding down stairs leading to a road well traveled by motor vehicles would be open and obvious even to an eleven-or twelve-year-old child exercising reasonable care for his or her own safety”).
The Appeals Court has consistently applied the above principles in subsequent cases. See, e.g., Lanza v. EQR Lincoln Lawrence, LLC, 69 Mass.App.Ct. 206, 208 (2007), Quinn v. Morganelli, 73 Mass.App.Ct. 50, 52 (2008), and Barrasso v. Hillview West Condominium Trust, 74 Mass.App.Ct. 135, 140 (2009).
Even in the daylight, to any reasonable person the Beacon Yards was an inherently forbidding place. This is apparent from the descriptions and exhibits in the record. See, e.g., Exhibits KK, YY and FFF in the Joint Appendix of Exhibits to BU’s motion. As noted, the *290 Yard extends for over a mile and is comprised of a network of approximately 20 intersecting rail lines incident to its function as a switching facility. There was no passenger station in the Yards, nor any crossings for public use. And approximately 50 trains per day passed through it. To enter such a place at night necessarily invited dire risk.[2]
And Molly had to be aware of the character of the Yards because she had a direct view of the Yards through the picture window of her dorm room. Id. at Exhibit H. Further, the record documents that Molly was an intelligent and competent person. Thus, there is no occasion here to consider any perceptual impairment that might otherwise be argued to affect the application of the open and obvious principle and its bar to recovery.
Although not material to the Court’s decision, the record further establishes that Molly and Andrew were trespassers. Their presence on the tracks of the Beacon Yards was a criminal offense. G.L.c. 160, §218. Liability under such circumstances attaches only if a landowner’s conduct was willful, wanton or reckless. Schofield v. Merrill, 386 Mass. 244, 245-46 (1982). By operation of the Wrongful Death Statute, G.L.c. 229, §2, a “railroad shall not be liable for negligence in causing the death of a person while walking or being upon such railroad.” Thus, to be actionable, CSX’s and the MBTA’s conduct must have been wanton, willful or reckless. One “acts wantonly, willfully and recklessly only when he inflicts the injury intentionally, or is so utterly indifferent to the rights of others that he acts as if such rights did not exist.” Issacson v. Boston, Worc., N.Y. Street Ry. Co., 278 Mass. 378, 387 (1932). On its review of the record, the Court finds no reasonable basis for a conclusion that any of the defendants’ conduct rose (or descended) to such a level. See also Montes v. Massachusetts Bay Transp. Auth., 446 Mass. 181, 185 (2006).
Finally, as noted earlier, the complaint against BU contains a contract count. The count is predicated on a theory that through its website and its police handbook BU contractually bound itself to take proactive measures to protect its students from harm. The plaintiffs submit that BU’s failure to do so with regard to the risk posed by the Beacon Yards breached that promise to Molly. For substantially the reasons stated at pages 17-20 of BU’s memorandum, the Court finds and rules that no reasonable jury could conclude that BU breached any contractual obligation to Molly to provide her with a reasonably safe educational environment.
ORDER
The defendants’ motions for summary judgment are ALLOWED. Judgment shall enter for the defendants.

 In granting the Turnpike Authority’s motion for summary judgment, as noted above, Judge Giles concluded that the open and obvious danger posed by the Yards obviated a duty of care. And she further held that the hole in the fence, as a matter of law, was not the proximate cause of the accident. The defendants have urged the Court to accept Judge Giles’s decision as the law of the case. See, e.g., the discussion of the relevant law at footnote 2 of page 2 of the memorandum submitted on behalf of President and Fellows of Harvard College. The Court declines to do so, but the Court independently comes to the same conclusion that, under the circumstances presented, none of the remaining defendants owed a duty of care to Molly with respect to her access to the Beacon Yards.

 Because of the blatant and unequivocal nature of the risk posed by the Yards and the ready availability of a means for a reasonable person to avoid it, there was no duty to remedy the risk. Circumstances that could arguably give rise to such a duty, as noted by the Appeals Court in Quinn v. Morganelli, supra, at 55, are not present here. Nor does the Appeals Court’s decision in Soederberg v. Concord Green Condominium Association, 76 Mass.App.Ct. 333, 339 (2010), finding a duty that a landowner remedy a certain open and obvious snow and ice condition, plausibly suggest that the defendants here had a duty to remedy the risk manifested by the Beacon Yards for persons in Molly’s circumstances.