This is an appeal from the summary judgment dismissing National Lumber Company's (National Lumber's) claims against the defendant, Matthew L. Fink.[2] Viewed in the light most favorable to National Lumber, against which summary judgment entered,[3] the summary judgment record reveals the following:
In August of 2007, MFN LLC (MFN), owned in part by Nicholas Sivieri, signed a credit agreement with National Lumber to purchase lumber and building materials. In August of 2008, Fink, who was not a member of MFN or otherwise affiliated with it, signed an agreement guaranteeing MFN's debts to National Lumber. In July of 2009, MFN executed a material supply purchase agreement with National Lumber to purchase building materials to be used to construct a residential dwelling known as the "Hajjar project." From July, 2009, until April 26, 2010, MFN purchased said materials from National Lumber for the Hajjar project and submitted multiple "change orders," which added to and subtracted from the list of building materials outlined in the material supply purchase agreement.
On April 26, 2010, MFN, through Sivieri, filed a certificate of cancellation with the Secretary of State. That same day, Sivieri filed a certificate of organization for a new company, NAS Development LLC (NAS). According to Sivieri's deposition testimony, MFN was dissolved and NAS formed because the other members of MFN had moved to Brazil.
After MFN was dissolved, Sivieri continued to work uninterrupted on the Hajjar project, ordering building materials and submitting additional change orders. The balance with National Lumber as of September 30, 2010 was (at least as Fink views it) paid in full by October 7, 2010. Sivieri signed three subsequent change orders, change orders 16, 17, and 18, in October, 2010. The last two deliveries pursuant to these change orders occurred in October and November of 2010. MFN did not pay for these materials, and this nonpayment is the subject of this litigation.
The parties dispute what, if anything, Sivieri told any National Lumber employee, before National Lumber had made its final deliveries, with respect to NAS and MFN. According to National Lumber's chief executive officer, Steven Kaitz, though, whose claims we must credit at the summary judgment stage, National Lumber did not know of MFN's dissolution until after this litigation commenced. After MFN's dissolution, Sivieri did begin to communicate with National Lumber employees using his NAS electronic mail (e-mail) account, and there is some evidence that invoices for the relevant materials were sent to him at the NAS address. However, he also sent e-mails from this account to his and his assistant's MFN e-mail addresses, and he and his assistant replied to e-mails that were sent to their MFN addresses. Furthermore, change orders 16, 17, and 18-all signed in October of 2010-by their terms state that Sivieri was signing on behalf of MFN.
Analysis. Viewing the evidence in the summary judgment record and the reasonable inferences that may be drawn therefrom in the light most favorable to the nonmoving party, here National Lumber, summary judgment is appropriate only when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Barrasso v. Hillview W. Condominium Trust, 74 Mass. App. Ct. 135, 137 (2009). Our review of the record is de novo. Ibid.
The motion judge granted Fink's motion for summary judgment on two independent grounds. First, she held that, "once MFN was dissolved and National Lumber began to do business with NAS, of which there is ample evidence, Fink was no longer the guarantor of MFN's debts." We read this to mean that, as a matter either of law or of undisputed fact, once MFN was dissolved, National Lumber stopped doing business with MFN and started doing business with NAS, and therefore, since Fink was not a guarantor for NAS, Fink could not be liable for any of the postdissolution debts.[4] But, as our discussion of the evidence makes clear, there is also ample evidence from which a jury could infer that National Lumber was doing business with MFN postdissolution. This fact is material, and genuinely disputed, and the judge should not have granted summary judgment on this ground. Whether the change orders were really submitted on behalf of NAS, the course of conduct between the parties, the knowledge of National Lumber, the nature of "change orders" like those at issue here, and other circumstances surrounding the transactions will have to be explored at trial.
The judge's second ground for granting summary judgment to Fink draws from the law governing what LLCs are permitted to do postdissolution. Even after dissolution, an LLC may continue to do business in a limited form:
"Upon dissolution and notwithstanding the filing of a certificate of cancellation pursuant to section 14, a limited liability company may continue its existence but shall not carry on any business except as necessary to wind up its affairs or distribute its assets which may include, but shall not be limited to, prosecuting and defending suits, whether civil, criminal or administrative, gradually settling and closing the limited liability company's business, disposing of and conveying the limited liability company's property, discharging or making reasonable provision for the limited liability company's liabilities and distributing to members any remaining assets of the limited liability company, without affecting the liability of members and managers and without imposing liability on a liquidating trustee." G. L. c. 156C, § 45(b ), as appearing in St. 2014, c. 371, § 1.
Postdissolution acts that are not "winding up" activity are ultra vires. See Salvato v. DiSilva Transp. Co., 329 Mass. 305, 308 (1952).
Applying these principles, the motion judge reasoned as follows: "Even if National Lumber could prove that the change orders were part of the original contract," she wrote-meaning that the change orders were part of a contract between National Lumber and MFN so that National Lumber was in fact doing business with MFN, not NAS-"the continuation of such business as the LLC was organized for after its dissolution is not considered part of winding up." That is, she concluded as a matter of law that this was not "winding up" activity, and that, if Sivieri had entered these change orders on behalf of MFN, he was acting ultra vires and, as a matter of law, while Fink would have been liable for proper winding up activity, he could not be liable for Sivieri's ultra vires actions.
To begin with, the factual record is insufficiently developed to support the motion judge's conclusion that this was not winding up activity within the meaning of the statute. National Lumber argues that the change orders were anticipated modifications of an underlying agreement obligating MFN to complete further purchases from National Lumber. If the change orders were anticipated modifications of the original agreement, this may be relevant to whether submitting them was winding up activity, as it might mean that the activity is properly characterized as "gradually settling and closing the limited liability company's business ... [or] discharging or making reasonable provision for the limited liability company's liabilities ...."[5] G. L. c. 156C, § 45(b ). There is, however, insufficient evidence in the record to allow us to determine what the nature of these change orders is, what the status of the Hajjar project was, and thus whether under the applicable standard submitting the change orders amounts to winding up activity; there are thus genuine issues of fact about the matter that must be resolved. Thus, the motion judge erred in granting summary judgment on this ground as well.
Beyond this, the motion judge concluded that if MFN's acts were ultra vires, Fink would be able to raise this as a defense. National Lumber challenges this assumption. It argues first that the terms of the guaranty agreement preclude Fink from raising a defense not available to MFN, and that MFN would have no ultra vires defense because it benefited from the change orders. See Nowell v. Equitable Trust Co., 249 Mass. 585, 602 (1924) (corporation cannot avail itself of ultra vires defense when other party has performed its contractual obligations in good faith and corporation received benefit of performance). In a footnote, the judge rejected the proposition that MFN would have no ultra vires defense because it benefited from the change orders:
"National Lumber argues that MFN cannot accept the benefits of the change order contracts, the 'additional materials,' and then set up a valid ultra vires defense to escape liability thereon. See Commissioner of Banks v. Tremont Trust Co., 259 Mass. 162, 180 (1926). After the dissolution of MFN, however, National Lumber was doing business with Sivieri; MFN did not accept the benefits of the change order contracts."
This analysis is erroneous because, for the reasons given above, it relies upon a disputed material fact: that National Lumber was not doing business with MFN upon dissolution. If the change orders were made on behalf of MFN, MFN likely got the benefit of National Lumber's performance. If this is the case, and if National Lumber's interpretation of the guaranty agreement is correct, then Fink would have no ultra vires defense. Since a trial on the disputed material fact is warranted in any event, we leave it up to the trial judge to consider the contract-based argument in the first instance.
National Lumber also argues that, as a matter of the law of suretyship, Fink could not raise ultra vires as a defense even if it could be raised by MFN. See Winn v. Sanford, 145 Mass. 302, 303-304 (1887) (surety cannot raise defenses "personal" to principal obligor, such as incapacity, even if principal obligor could raise such defense); Matter of L & S Indus., Inc., 989 F.2d 929, 934 (7th Cir. 1993) (ultra vires is personal defense that cannot be raised by surety); Restatement (Third) of Suretyship and Guaranty, § 34(1)(b) (1996) (surety cannot raise incapacity as defense even if available to principal obligor). Again, we leave it for the trial judge to consider this argument in the first instance.
The summary judgment is reversed, and the case is remanded to the Superior Court for further proceedings consistent with this memorandum and order.
So ordered.
Reversed and remanded.

The plaintiff's claims against the other two defendants, Nicholas A. Sivieri and MFN LLC, were resolved by a default judgment and are not the subject of this appeal.

National Lumber did not appeal from the denial of its cross motion for summary judgment.

We do not read this to mean that, as a matter of law, had MFN been winding up its business, as allowed by the statute, see infra, Fink would not have been its guarantor-the motion judge correctly indicated elsewhere that he would have been.

Indeed, depending on the circumstances it might be possible to view the change orders that way even if they are new contracts, necessary to finish the work on the outstanding project as part of winding up MFN's business.