KATHERINE E. QUINN *vs.* CARMINE MORGANELLI & another.[1]

No. 07-P-1804.

Suffolk. June 20, 2008. - October 28, 2008.

Present: CYPHER, COHEN, & FECTEAU, JJ.

*Negligence,* One owning or controlling real estate, Open and obvious danger, Duty to warn, Invited person.

In a civil action arising from injuries the plaintiff sustained when she fell as she moved from a hallway in the defendants' home to a sunken living room, the judge erred in granting summary judgment in favor of the defendants, where a jury reasonably could find that the use of the same tile in the hallway and the sunken living room, together with lighting conditions created by the windows and a skylight, posed an unreasonable danger to visitors, and that the defendants knew or reasonably should have known that to be the case, such that they had a common-law duty to warn the plaintiff [52-53]; and where a jury also would be warranted in finding that this was not a case of open and obvious danger [53-54].

CIVIL ACTION commenced in the Superior Court Department on September 7, 2005.

The case was heard by *John C. Cratsley,* J., on a motion for summary judgment.

*Kathleen M. Curry* for the plaintiff.

*Michael P. Johnson* for the defendants.

COHEN, J. In this premises liability action, the plaintiff appeals from the allowance by a judge of the Superior Court of the defendants' motion for summary judgment. We conclude that there remain genuine issues of material fact and that the case should not have been resolved as matter of law.

*Background.* Viewing the summary judgment record in the light most favorable to the plaintiff, see *Augat, Inc.* v. *Liberty Mut. Ins. Co.,* 410 Mass. 117, 120 (1991), the relevant facts

[1]Vienna Morganelli.

may be summarized as follows. On September 14, 2003, the plaintiff visited the defendants' residence along with her long-time boyfriend, Albert McCarron,[2] and her sister, Pauline Quinn. The residence had been constructed in or around 1980-1981, with the defendants serving as their own general contractor. It had a sunken living room that was several inches lower than the adjacent front hallway. The flooring tiles used in the hallway were identical to those used in the sunken living room — they were of the same color, texture, and brand.

As established by her deposition testimony, the plaintiff had been to the defendants' home only twice, and on one of those occasions, she had only been outside for a barbecue. When she entered the house on the day of the accident, bright sunlight emanated from windows near the front door and skylights above the living room. The plaintiff and her sister greeted defendant Vienna Morganelli in the hallway, and at Vienna's invitation, began to move from the hallway into the sunken living room. While introducing her sister to Vienna, the plaintiff fell into the living room. It is undisputed that the fall caused the plaintiff to sustain a fractured hip and necessitated that the plaintiff undergo surgery and rehabilitation.

At her deposition, the plaintiff stated that she did not trip, she "just kind of fell through the air," and that "all of a sudden, I couldn't understand where I was flying through the air, and then I went down with a hard thud . . . ." She also explained that because of "[t]he light from the window . . . and where it was a sunny day and the floor was the same color as the living room, I think that might have been an optical illusion." In her answers to interrogatories she stated unequivocally that "[t]he light from the windows blocked the view of the step. The color of the step was close to or the same [as the] color of the floor and created a deceptive condition which could not be seen clearly." The plaintiff also testified, and it is not disputed, that she received no warning about the existence of the step-down between the hallway and the living room.

The plaintiff's sister testified at her deposition that she became aware of the difference in level only because the plaintiff had

[2]McCarron is the uncle of defendant Vienna Morganelli.

fallen down, and would not have seen it otherwise. After the plaintiff fell, Vienna said, "Oh, my God, that step," and told the plaintiff that, on a previous occasion, one of her son's friends had fallen from the step but then caught himself.

The plaintiff submitted affidavits from two expert witnesses, each of whom had examined a set of photographs that were included in the summary judgment record. Sean P. Curry, identified in his affidavit as a licensed builder and former building supervisor, opined that a hazardous condition was created by having the same tile in the hallway and the sunken living room, and that the location of the skylights enabled light to reflect off the floors, making them "blend together." Philippe McGreenery, who identified himself as having been "involved in the Marble/Tile Business for the last twenty years," opined that the tile used was glazed ceramic tile; that it would be slippery in nature; and that he rarely, if ever, had seen glazed ceramic tile used in a hallway or sunken floor adjoining an entrance way.

*Discussion.* An owner or possessor of land owes a common-law duty of reasonable care to all persons lawfully on the premises. *Davis* v. *Westwood Group*, 420 Mass. 739, 742-743 (1995). This common-law duty includes an obligation to maintain the "property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk." *Mounsey* v. *Ellard*, 363 Mass. 693, 708 (1973), quoting from *Smith* v. *Arbaugh's Restaurant, Inc.*, 469 F.2d 97, 100 (D.C. Cir. 1972), cert. denied, 412 U.S. 939 (1973). It also includes an obligation to warn visitors of any unreasonable dangers of which the landowner is aware or reasonably should be aware. *O'Sullivan* v. *Shaw*, 431 Mass. 201, 204 (2000). However, "[l]andowners are relieved of the duty to warn of open and obvious dangers on their premises because it is not reasonably foreseeable that a visitor exercising (as the law presumes) reasonable care for his own safety would suffer injury from such blatant hazards." *Ibid.*

The plaintiff contends that the premises were not in reasonably safe condition because the existence of the change in level between the hallway and the living room was obscured by the manner in which these areas were tiled and lit, and that the defendants breached their duty of care by failing to remedy this condition or

to warn her about it.[3] The points of contention before the motion judge and again on appeal are whether the plaintiff submitted sufficient proof that there was a dangerous condition of which the defendants had actual or constructive notice, and if so, whether the danger was open and obvious as matter of law.

On this record, a jury reasonably could find that the use of the same tile in the hallway and the sunken living room, together with the lighting conditions created by the windows and skylight, posed an unreasonable danger to visitors, and that the defendants knew or reasonably should have known that to be the case. Jurors could draw this conclusion from their own evaluation of the photographs in the record; the testimony of the plaintiff and her sister as to their inability to see the change in level; the opinion of Sean Curry, which, reasonably read, sufficed to establish that there was a deviation from proper building practice[4]; and Vienna's statements at the time of the accident, including her admission that there had been a prior incident in which her son's friend had fallen from the step but then caught himself. See *Denton* v. *Park Hotel, Inc.*, 343 Mass. 524, 527-528 (1962).[5]

---

[3]The defendants argue that the plaintiff directs her claim against them in their capacities as designers and builders of their home in 1981, and that her action therefore is barred by the six-year statute of repose applicable to claims for negligent design, planning, or construction of an improvement to real property, G. L. c. 260, § 2B. However, the plaintiff's claim also may be understood as directed against the defendants as owners and occupiers of the property. Such a claim is not subject to the statute of repose.

[4]The judge questioned the adequacy of Curry's qualifications but did not find that Curry was unqualified. While the Curry affidavit could have been more detailed as to his prior experience, we think that the recitations that he was a licensed builder and a former building supervisor were adequate to endow the affidavit with probative value, particularly where there is no indication that the defendants moved to have the affidavit struck on the basis of insufficient qualifications or otherwise. In any event, given the other evidence from which a defective condition could be inferred, an opinion that the step did not conform with good building practice was not essential to the plaintiff's case. Indeed, even if the defendants had presented proof that the step conformed to all applicable standards, such proof would not have entitled them to summary judgment. See *Upham* v. *Chateau de Ville Dinner Theatre, Inc.*, 380 Mass. 350, 353-354 (1980).

[5]Because the evidence establishes that the plaintiff fell not because she slipped, but because she was unaware of the change in level and stepped into the air, the McGreenery affidavit, irrespective of its other deficiencies, does not assist the plaintiff in establishing her case, as the affidavit addresses only the slippery characteristics of glazed tile.

A jury also would be warranted in finding that this was not a case of "open and obvious" danger. We have reviewed the photographs in the record and think that reasonable people may differ in their conclusions as to whether the step-down was obvious. Furthermore, even though the plaintiff may have had actual knowledge of the step-down from having been inside the defendants' home previously, that fact bears only on her comparative negligence, see G. L. c. 231, § 85, as appearing in St. 1969, c. 761, § 1, and as appearing in St. 1973, c. 1123, § 1, and should not have played a role in the judge's analysis of the defendants' duty, which turns on whether the risk of injury was obvious to a hypothetical person of average intelligence. See *O'Sullivan* v. *Shaw*, 431 Mass. at 209 & n.3.

Because in this case the hazard that resulted in the plaintiff's injuries is not open and obvious as matter of law, the plaintiff is entitled to proceed on the theory that the defendants breached their common-law duty of care by failing to warn her of an unreasonable danger of which they were or should have been aware. She also may proceed on the theory that the defendants were negligent in failing to remedy that condition, it being for the jury to decide whether remediation of the hazard — and not simply a warning — reasonably was required to discharge the defendants' duty of care, keeping in mind that a landowner is "not obliged to supply [lawful visitors with] a place of maximum safety." *Lyon* v. *Morphew*, 424 Mass. 828, 833 (1997), quoting from *Toubiana* v. *Priestly*, 402 Mass. 84, 88 (1988).

Should the jury ultimately conclude that the danger was, in fact, open and obvious, the question would remain whether the plaintiff nevertheless may recover on a duty to remedy theory. Our case law has not squarely addressed this issue, and it is not entirely free from doubt. See and compare *Young* v. *Atlantic Richfield Co.*, 400 Mass. 837, 842-843 (1987), cert. denied, 484 U.S. 1066 (1988), separately analyzing the defendant's duty to design and maintain its gasoline station in a safe manner and its duty to warn of obvious risks associated with a customer's leaving his or her vehicle to pump gasoline at an island, exposed to traffic, that was not self-serve, with *O'Sullivan* v. *Shaw*, *supra* at 204, stating generally, but in the context of a duty to warn case, that a "landowner's duty to protect lawful visitors against danger-

ous conditions on his property ordinarily does not extend to dangers that would be obvious to persons of average intelligence."

We think that the use of the word "ordinarily" in the *O'Sullivan* case admits of potential exceptions to the general rule of no liability, and that this reading of the case is most in harmony with basic principles of tort law. The general rule of no liability is grounded in the assumption that harm resulting from an obvious danger is not reasonably foreseeable by a defendant, and for that reason, no duty of care should arise.[6] Accordingly, consistent with the general rule, exceptions could be found to exist in situations where it remains reasonably foreseeable that the danger would cause injury despite the fact that the danger is obvious or was brought to the plaintiff's attention. See Restatement (Second) of Torts § 343A (1965), and especially comment f.[7] See also 5 Harper, James & Gray, Torts § 27.13 (Supp. 2008). Elsewhere it has been recognized explicitly in the law of premises liability that even if the obviousness of a danger negates any duty to warn of it, such obviousness does not necessarily negate the duty to remedy it. See, e.g., *Osborn* v. *Mission Ready Mix,* 224 Cal. App. 3d 104, 122 (1990). Moreover, such a rule has long existed in Massachusetts product liability law. See *Uloth* v. *City Tank Corp.,* 376 Mass. 874, 879-881 (1978).

It is premature, however, to decide whether any such exception might apply in the present case, as the record on this point is insufficiently developed. In the discretion of the trial judge, the issue may be preserved for future consideration by submit-

---

[6]The concept of "foreseeability" is used to define the limits of a duty of care as well as the limits of proximate cause. See *Whittaker* v. *Saraceno,* 418 Mass. 196, 198-199 (1994); *Heng Or* v. *Edwards,* 62 Mass. App. Ct. 475, 486-487 (2004).

[7]Comment f provides in relevant part: "Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the [visitor's] attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the [visitor] will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." Restatement (Second) of Torts, § 343A comment f, at 220. This comment was referenced with apparent approval by the Supreme Judicial Court in *Ferris* v. *Monsanto Co.,* 380 Mass. 694, 704 n.8 (1980) (Kaplan, J.).

ting the case to the jury using a special verdict or interrogatories. See Mass.R.Civ.P. 49, 365 Mass. 812 (1974).

*Conclusion.* Summary judgment for the defendants is reversed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*