Tucker, Richard T., J.
The plaintiff, Marie Justice-Hughes (“Ms. Justice-Hughes”) brought this negligence action for personal injuries she suffered after slipping in a utiliiy room of the defendant Quaside, Inc.’s (“Quaside”) Springside of Pittsfield nursing home (“the nursing home”). This action is before the court on defendant GF/Health Systems, Inc.’s (“GF/Health Systems”) Motion for Summary Judgment on the grounds that GF/Health Systems was not in control of the premises, that GF/Health Systems did not owe Ms. Justice-Hughes a duty to warn against dangerous conditions, and that GF/Health Systems qualifies, under M.G.L.c. 231, §85K, for limitation of tort liability afforded to certain charitable organizations. For the following reasons, GF/Health Systems’ Motion for Summary Judgment is DENIED.
BACKGROUND
The facts and reasonable inferences therefrom, viewed in the light most favorable to the plaintiff, are as follows. Bank of N.Y. v. Bailey, 460 Mass. 327, 331 (2011).
Ms. Justice-Hughes was working as a licensed practical nurse at the nursing home in Pittsfield, Massachusetts.[4] Ms. Justice-Hughes was working at the nursing home pursuant to a temporary assignment from a nurse staffing company, Procare USA, LLC.[5] Near the end of her 11:00 PM to 7:00 AM shift on July 14, 2006, Ms. Justice-Hughes took two trash bags from her medical cart to the dirty utility room to dispose of the trash.[6] After walking into the dirty utility room, Ms. Justice-Hughes tossed the two trash bags into the garbage can. As Ms. Justice-Hughes turned around to leave the room, she began to slip on the tiles just inside the door.[7] Though she broke her fall by grabbing onto a door knob, Ms. Justice-Hughes hit the left side of her body against an adjacent wall and twisted her left ankle and knee.
At her deposition, Ms. Justice-Hughes testified that she knew the drain in the dirty utility room did not work properly and that water and feces would often collect around the drain, making the surrounding tile slippery. Ms. Justice-Hughes also testified that she had often complained to her unit manager about the wet conditions in the dirty utility room. Despite this testimony, Ms. Justice-Hughes did not indicate in her deposition that the dirty utility room floor was subject to these same conditions on the day of the alleged incident.
On July 14, 2006, the date of the alleged incident, Quaside was party to a management agreement (“the agreement”) with GF/Health Systems. As memorialized by the agreement, Quaside “engaged [GF/Health Systems] to manage, supervise and administer the day-to-day operations of [the nursing home].” Exhibit 6, §1.1. Services to be performed by GF/Health Systems included the management, operation, maintenance, marketing and servicing of the nursing home.[8] Gretchen K. Dougherty, who is currently GF/Health Systems’ president and was GF/Health Systems’ director of risk management at the time of the alleged incident testified in her deposition that GF/Health *113 Systems worked with the nursing home’s administrator and provided for the overall management of the facility. In addition to other resources, GF/Health Systems provided risk management training to the nursing home’s administrators. Exhibit 12, at 30, 81.
GF/Health Systems is a Georgia corporation doing business in Massachusetts under a Foreign Corporation Certificate. GF/Health Systems’ Georgia articles of incorporation state that, “the corporation shall be a nonprofit corporation under the provisions of the Georgia Nonprofit Code,” and that, “it shall be organized . . . exclusively for public charitable uses and purposes within the meaning of §501(c) (3) of the Internal Revenue Code to establish, acquire, own, maintain and operate nursing homes.” Exhibit 9, Para. 3. GF/Health Systems’ Massachusetts Foreign Corporation Certificate states that the activities of the corporation in the Commonwealth are, “to provide support and management services to an affiliated organization.” Exhibit 10, Para. 6. While GF/Health Systems also filed a certificate of existence from the Georgia Secretary of State with the Commonwealth of Massachusetts denoting its nonprofit status, it did not also file in Massachusetts its Georgia articles of incorporation denoting its exclusive charitable purpose.
DISCUSSION
Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Mass.R.Civ.P. 56(c); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). The moving party bears the burden of affirmatively showing that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). If the nonmoving party bears the burden of proof at trial, the moving party may satisfy the Rule 56 burden by submitting evidence negating an essential element of the nonmoving party’s claim or by demonstrating that the nonmoving party lacks sufficient evidence to establish an essential element of its claim. Kourouvacilis, 410 Mass. at 715. The court reviews the evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. Att’y Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).
I. Control and the Duty to Warn
Summary judgment is generally an inappropriate means to resolve a claim of negligence because the question is usually one of fact for the jury. Petrell v. Shaw, 453 Mass. 377, 381 (2009). When no rational view of the evidence would permit a jury to find negligence, though, the judge may decide the issue as a matter of law. Id. To hold a defendant liable for negligence, a plaintiff must establish that a defendant owed the plaintiff a legal duty, and that a breach of that duty proximately caused injury to the plaintiff. Id. at 385. Where the claim alleges liability for damages caused by a condition of the premises, a plaintiff must also establish that the defendant was in control of the offending instrumentality. Robert Williams, Inc. v. Ferris, 355 Mass. 288, 293 (1969). The court is concerned with control of the premises or instrumentality, including power and dominion, rather than ownership. Id., Madsen v. E. Gas & Fuel Assoc., 7 Mass.App.Ct. 27, 30-31 (1979). The party in control owes a duty of care in all circumstances to each individual lawfully present on the premises. Mounsey v. Ellard, 363 Mass. 693, 708 (1973). This duty of care requires that the party in control maintain its premises in a reasonably safe condition under all the circumstances, including the likelihood of injuries to others, and the burden of avoiding the risk. Id.
The duty of care, under the circumstances, may also include a duty to warn against risks of which the party in control is, or should be, aware. Burr v. Mass. Elec. Co., 356 Mass. 144, 147 (1969). Where a risk would be obvious to a person of average intelligence under the circumstances, the party in control is often relieved of its duty to warn. Young v. Atl. Richfield Co., 400 Mass. 837, 842 (1987). However, because “the duty to warn is separate and distinct from the duty of care . . . the fact that a danger is open and obvious does not operate to negate the duty of care.” Judge v. Carrai, 77 Mass.App.Ct. 803, 806 (2010). Further, obviousness does not necessarily negate the duty to remedy the condition where the party in control knows or should know of its existence. See Soederberg v. Concord Greene Condo. Assoc., 76 Mass.App.Ct. 333, 338 (2010); see also Quinn v. Morganelli, 73 Mass.App.Ct. 50, 55 (2008). Therefore, even without a duty to warn, the party in control of premises, bound by the duty of care, must maintain reasonably safe premises. See Soederberg, 76 Mass.App.Ct. at 336.
A. GF/Health System’s Control of the nursing home
On the date of the alleged incident, GF/Health Systems was under contract to provide, among other things, management, maintenance and operational services to Quaside’s nursing home. As part of its obligations under the agreement, GF/Health Systems provided risk management training to the nursing home’s administrators, and conducted quarterly visits to the nursing home.
GF/Health Systems argues that Section 2 of the agreement, requiring it to perform services to which Quaside and GF/Health Systems from time to time agree are necessary, prevents it from being deemed in control of the nursing home. However, this section only appears after the agreement sets forth the services GF/Health Systems is to provide Quaside, namely the management, supervision and administration of the facility’s day-to-day operations. Viewed in the light most favorable to the plaintiff, this court cannot hold that GF/Health Systems lacked control of the nursing home as a matter of law.
*114 B. GF/Health System’s Duty to Warn against dangerous conditions
GF/Health Systems also argues that it was relieved of a duty to warn the plaintiff of the dangerous conditions existing in the dirty utility room because those conditions were open and obvious. As the basis of this argument, GF/Health Systems points to Ms. Justice-Hughes’ deposition testimony that she knew that the drain in the dirty utility room did not function properly and that the resulting collection of water and feces around the drain often made the floor slippery. However, there is no testimony that Ms. Justice-Hughes observed these same conditions in the dirty utility room on the day of the alleged incident. Whether the damp and dirty footmarks Ms. Justice-Hughes noticed on the tiles in front of the door as she exited the dirty utility room evidenced an open and obvious danger, is a factual issue for a jury’s consideration. See Quinn, 73 Mass.App.Ct. at 54. In any event, GF/Health Systems is not excused from remedying this condition, even if open and obvious, if it continued for a perceptible period of time. See Id.
A. Limitation of Tort Liability for Certain Charitable Organizations under M.G.L.c. 231, §85K
GF/Health Systems contends that as a corporation organized under the laws of the state of Georgia to cany on the charitable purpose of establishing, acquiring, owning, maintaining and operating nursing homes, it is entitled, as a matter of law, to the limitation of liability for torts provided in M.G.L.c. 231, §85K. M.G.L.c. 231, §85K provides, in relevant part:
It shall not constitute a defense to any cause of action based on tort brought against a corporation, trustees of a trust, or members of an association that said corporation, trust, or association is or at the time the cause of action arose was a charity; provided, that if the tort was committed in the course of any activiiy carried on to accomplish directly the charitable purposes of such corporation, trust, or association, liability in any such cause of action shall not exceed the sum of twenty thousand dollars exclusive of interest and costs.
In order to enjoy the limitation of liability provided by §85K, a defendant must show that it is a charity, and that the injury for which it is allegedly responsible occurred in the direct pursuit of its charitable purpose. Blauvett v. AFSCME Council Local 1703, 74 Mass.App.Ct. 794, 797 (2009). The issue of whether an organization is a charity is generally for the fact finder to determine. See Keene v. Brigham & Women’s Hosp., Inc., 439 Mass. 223, 239 (2003). A corporation’s charter may establish a charitable purpose and operation as a matter of law only in the absence of evidence warranting a contrary finding. Barrett v. Brooks Hosp., Inc., 338 Mass. 754, 758 (1959); see In the Matter of Troy, 364 Mass. 15, 57 (1978) (language in charter, articles of organization, constitution or by-laws, purposes declared and work performed integral to determination of corporation’s charitable purpose). Whether or not the activiiy occurred in the direct pursuit of the defendant’s charitable purpose is a question of fact. Conners v. Ne. Hosp. Corp., 439 Mass. 469, 479 (2003).
As noted, GF/Health Systems is a Georgia corporation conducting business in the Commonwealth of Massachusetts under a Foreign Corporation Certificate.[9] While the articles of incorporation under which GF/Health Systems operates in Georgia clearly define a charitable purpose, neither the Foreign Corporation Certificate nor the Certificate of Existence filed by GF/Health Systems with the Commonwealth identify it as a charity or set forth a charitable purpose to be pursued here.[10] Thus, it remains an issue of fact as to whether GF/Health Systems, as registered to operate in the Commonwealth, is a charitable organization. Additionally, there remains an issue of fact as to whether GF/Health Systems was pursuing a charitable purpose in the Commonwealth at the time of the plaintiffs alleged accident and whether the alleged accident occurred in the direct pursuit of that purpose. See Conners, 439 Mass. at 479. GF/Health Systems has merely described its activities in the Commonwealth as providing support and management to an affiliated organization. Neither the “affiliated organization” nor its purpose have been identified.[11] Further, GF/Health Systems has not provided the Commonwealth with any articles of incorporation or bylaws setting forth its charitable purpose. Accordingly, GF/Health Systems has not established that it is entitled to §85K’s limitation of liability as a matter of law. GF/Health Systems’ motion for summary judgment is therefore denied.
ORDER
For the reasons stated herein, it is hereby ORDERED that defendant GF/Health Systems’ motion for summary judgment is DENIED.

Nhe nursing home is owned by defendant Quaside.

 Quaside, Inc. has filed a Third-Party Complaint against Procare USA, LLC on the grounds that Procare USA, LLC agreed to indemnify Quaside, Inc. against any claim, liability, loss, damage, cost, or expense incurred by Quaside, Inc. as a result of Procare USA, LLC’s breach of the staffing agreement. Quaside, Inc. alleges that plaintiff Marie Justice-Hughes’ negligence on the date of the alleged slip and fall constitutes a breach entitling Quaside, Inc. to indemnification.

The “dirty utility room”, as it is referred to in both GF/Health System’s Motion for Summary Judgment and the plaintiffs opposition to said motion, and as it is referred to colloquially by the nurses at the Springside nursing home, is a room where the soiled linens of the nursing home’s incontinent residents are brought to be cleaned or disposed of.

Plaintiff testified in her deposition that the tiles just inside the door of the dirty utility room were damp and had *115 dirty footmarks. She also testified that there was no standing water in the dirty utility room on the day of the alleged incident. Exhibit 2, at 186-88.

Relevant portions of the Management Agreement are as follows:
WHEREAS, [Quaside] wishes to retain the services of [GF/Health Systems] as manager of the facilities with responsibilities as agent for [Quaside] acting on behalf of [Quaside], for managing the facilities and subject to the terms of this Agreement, for performance on behalf of [Quaside] of obligations of [Quaside] relating thereto
WHEREAS, [GF/Health Systems] is willing to perform such services with regard to the management, operation, maintenance, marketing and servicing of the facilities.
1.1 Goals of Engagement. Effective on the Effective Date, [Quaside] hereby engages [GF/Health Systems] to manage, supervise, and administer the day-to-day operations of the facilities.
2. Services to be furnished, by [GF/Health Systems]. [GF/Health Systems] shall provide [Quaside] with such services as [Quaside] and [GF/Health Systems] shall agree from time to time are necessary to achieve the goals of engagement.
2.2 [GF/Health Systems] shall provide to [Quaside] relevant information which comes to its attention with respect to the management and operation of the not for profit nursing homes.
3. Management Fee. [Quaside] shall pay [GF/Health Systems a monthly Base Management Fee for clinical and administrative systems, policies and procedures, support and direction, and financial management.

Among other required filings, a foreign corporation wishing to conduct business in the Commonwealth of Massachusetts must file a certificate with the state secretary, “setting forth ... a brief description of the activities to be conducted by the foreign corporation in the Commonwealth.” M.G.L.C. 156D, §15.03(a)(7). Additionally, a foreign corporation must file a certificate of existence authenticated by the requisite official from the state under which the corporation is organized. §15.03(b).

Defendant does not point to, nor has this court found, any authortty suggesting that a foreign corporation is entitled to the protection of a Massachusetts statute limiting the liability for the torts of a charitable corporation.

M.G.L.c. 180 governs Corporations for Charitable and Certain other Purposes. Section 2 of that chapter defines “corporation” as a domestic corporation that was either established for one or more of the purposes delineated in §4, or organized specifically under chapter 180. (emphasis added). One of the purposes set forth in §4 is the “prosecution of any . . . medical. .. purpose.” Even though the text of G.L.c. 231, §85K does not suggest that a corporation must be organized under chapter 180 to enjoy its limitation of tort liability, it seems that a foreign corporation would be apt to identify one of §4’s purposes in its filings with the Commonwealth to enjoy §85K’s limitation as a matter of law.