APPEALS COURT 
 
 DAWN M. VARLEY vs. EVA B. WALTHER

 
 Docket:
 24-P-511
 
 
 Dates:
 February 11, 2025 – May 16, 2025
 
 
 Present:
 Massing, Hershfang, & Tan, JJ.
 
 
 County:
 Plymouth
 

 
 Keywords:
 Negligence, Duty to warn, Open and obvious danger. Practice, Civil, Directed verdict, Judgment notwithstanding verdict.
 
 

      Civil action commenced in the Superior Court Department on March 20, 2019. 
     The case was tried before Brian S. Glenny, J., and a motion for judgment notwithstanding the verdict or for a new trial was considered by him. 
Ben N. Dunlap for the defendant.
Dana Alan Curhan for the plaintiff.
     MASSING, J.  The plaintiff, Dawn M. Varley, fell and severely injured her ankle while leaving the apartment that she rented from her mother, the defendant, Eva B. Walther.  The plaintiff sued, alleging that the defendant negligently removed a platform in front of the plaintiff's front door without notice, causing the plaintiff's fall.  After trial in the Superior Court, a jury found the defendant negligent and awarded damages to the plaintiff.  The defendant appeals, arguing that the plaintiff failed to prove the existence of a defect or hazardous condition and that the defendant had no duty to warn the plaintiff because the removal of the platform was "open and obvious."  We affirm.  
     Background.  Viewing the record in the light most favorable to the plaintiff, see O'Brien v. Pearson, 449 Mass. 377, 383 (2007); Tosti v. Ayik, 394 Mass. 482, 494 (1985), the relevant facts are as follows.  The parties lived at the same address in Whitman.  The property consisted of a main front house built in the 1940s and an attached "ranch-style apartment" in the back that was added in the 1980s.  The defendant lived in the front house with her husband, until his death, and her sister.  The plaintiff and her husband had rented the apartment from the defendant since 1988.  From 1988 to 2013, the exterior door of the apartment opened onto a landing approximately eight inches below the level of the door sill, which connected to a set of stairs leading to the driveway.  The bottom portion of the storm door was a solid panel that partially blocked the view of the landing from inside the apartment.  The only source of exterior lighting was a motion-activated light fixture that did not go on until a person leaving the apartment had taken two steps outside, a delay of three to four seconds.  
     In January 2013, to accommodate her sister's difficulty climbing stairs, the defendant arranged for a local charity to install a ramp over the stairs.  At the defendant's request, the plaintiff's oldest son built a platform over the landing to connect the ramp to the plaintiff's front door "so it would be level."  The platform eliminated the drop from the front door, making it possible for a wheelchair to roll easily from the ramp across the platform and through the door.  The ramp and platform remained in place for over three years.  At some point in 2016, after her sister's death, the defendant asked the plaintiff's son to remove the platform.  The defendant did not tell the plaintiff when the platform would be removed or that it had been removed.  
     One day in April 2016, the plaintiff returned home from work at around 3:30 P.M. and saw that the platform had been removed but that the ramp remained in place.  She walked up the ramp, stepped down to the landing, stepped up through her front door, and proceeded to have a routine afternoon and evening.  At around 10:30 P.M., she went to retrieve something from her car.  She opened the storm door and stepped outside into the dark, expecting to step onto a level surface as she had done "10,000 times" or more over the past three years.  "[W]ithin a second [she] was on the ground" and her "foot was facing the wrong direction."  The motion-activated light came on only after she fell.  She suffered a three-bone ankle fracture that required surgery and physical therapy.  
     Discussion.  1.  Standard of review.  The defendant preserved her claims on appeal by raising them in motions for a directed verdict and for judgment notwithstanding the verdict.  See International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 846-847 (1983); Motsis v. Ming's Supermkt., Inc., 96 Mass. App. Ct. 371, 382 (2019); Hatton v. Meade, 23 Mass. App. Ct. 356, 361-362 (1987).  Her claims present questions of law, which we review "under the same standard used by the trial judge."  O'Brien, 449 Mass. at 383.  "Our duty in this regard is to evaluate whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be made in favor of the [nonmovant].'"  Id., quoting Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 121 (1992).  A reasonable inference must be "based on 'probabilities rather than possibilities' and not the result of 'mere speculation and conjecture.'"  Poirier v. Plymouth, 374 Mass. 206, 212 (1978), quoting Alholm v. Wareham, 371 Mass. 621, 627 (1976).  
     2.  Whether the defendant created an unreasonably dangerous condition.  "Before liability for negligence can be imposed, there must first be a legal duty owed by the defendant to the plaintiff, and a breach of that duty proximately resulting in the injury."  Davis v. Westwood Group, 420 Mass. 739, 742-743 (1995).  "An owner or possessor of land owes a common-law duty of reasonable care to all persons lawfully on the premises."  O'Sullivan v. Shaw, 431 Mass. 201, 204 (2000).  This duty includes an obligation to maintain the property "in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk" (citation omitted).  Mounsey v. Ellard, 363 Mass. 693, 708 (1973).  See Papadopoulos v. Target Corp., 457 Mass. 368, 376 (2010) (landlord has "general duty to keep the common areas of a leased premises in a reasonably safe condition").  The plaintiff bears the burden of proving that the landowner failed to exercise reasonable care in a manner that caused injury to the plaintiff.  See Bernier v. Smitty's Sports Pub, Inc., 90 Mass. App. Ct. 472, 475 (2016). 
     The defendant argues that the plaintiff presented no objective evidence, such as an industry standard or building code, to prove that the eight-inch drop from the front door to the landing was an unreasonably dangerous condition, and no evidence that the motion-activated lighting was defective or unsafe in general.  The plaintiff argued, however, that in view of all the circumstances known to the defendant -‑ the presence of the platform for three years, the sudden change in configuration from a level landing to an eight-inch drop, and the absence of sufficient lighting -‑ the defendant did not use reasonable care to protect the plaintiff from foreseeable injury.  
     The circumstances in this case are similar to those presented in Quinn v. Morganelli, 73 Mass. App. Ct. 50, 51 (2008), where the defendants' front hallway and adjacent sunken living room, several inches below, were covered with the same flooring tile.  Not perceiving the difference in levels, the plaintiff fell into the living room and fractured her hip.  We reversed the allowance of summary judgment for the defendants, holding that "a jury reasonably could find that the use of the same tile in the hallway and the sunken living room, together with the lighting conditions created by the windows and skylight, posed an unreasonable danger to visitors, and that the defendants knew or reasonably should have known that to be the case."  Id. at 53.  Given this evidence, "from which a defective condition could be inferred, an [expert] opinion that the step did not conform with good building practice was not essential to the plaintiff's case."  Id. at 53 n.4.  As in Quinn, the jury here could reasonably infer that by removing the platform outside the front door and changing a level landing to a sunken one, without adequate lighting or other precautions, the defendant created an unreasonably dangerous condition.
     3.  Duty to warn.  Because the jury instructions permitted the jury to find negligence based on the defendant's failure to warn the plaintiff of the newly created danger outside her front door, we address the defendant's claim that on the facts before the jury, the defendant was relieved of her duty to warn because the platform's removal, and the subsequent drop to the landing, were open and obvious.
     A landowner's duty of reasonable care includes the obligation to "warn visitors of any unreasonable dangers of which the landowner is aware or reasonably should be aware."  Davis, 420 Mass. at 743.  However, a landowner has no duty to warn of an "open and obvious" danger "because it is not reasonably foreseeable that a visitor exercising (as the law presumes) reasonable care for his own safety would suffer injury from such blatant hazards."  Dos Santos v. Coleta, 465 Mass. 148, 154 (2013), quoting O'Sullivan, 431 Mass. at 204, 211.  "The landowner has no duty to warn of such hazards 'because the warning would be superfluous for an ordinarily intelligent plaintiff.'"  Dos Santos, supra, quoting Papadopoulos, 457 Mass. at 379.  Whether a danger is open and obvious is a question of fact for the jury to decide.  See O'Sullivan, supra at 209 n.3.
     While there was no dispute that the plaintiff saw that the platform had been removed when she returned from work during daylight hours, the jury were free to consider the plaintiff's argument that the newly created drop to the landing was not open and obvious when she encountered it several hours later in the dark of night.  Given the lack of lighting when the plaintiff took the step out the front door, it was not unreasonable for the jury to have concluded that the absence of the platform was not open and obvious.  See Quinn, 73 Mass. App. Ct. at 53-54 (photographs of step sufficient to "think that reasonable people may differ in their conclusions as to whether the step-down was obvious").  See also Alqadhi v. Standard Parking, Inc., 405 Ill. App. 3d 14, 18 (2010) (evidence supported finding that unpainted curb was not open and obvious danger due to lighting conditions and lack of contrast that created illusion of walking on flat surface).
     "Furthermore, even though the plaintiff may have had actual knowledge" of the platform's removal from having seen it seven hours before her fall, "that fact bears only on her comparative negligence" and does not affect our "analysis of the defendant['s] duty, which turns on whether the risk of injury was obvious to a hypothetical person of average intelligence."  Quinn, 73 Mass. App. Ct. at 54.  The jury in fact found that the plaintiff was negligent but determined that her negligence was not a "substantial contributing cause of her injuries."  
     Because the evidence supported the jury's verdict that the defendant created an unreasonably dangerous condition, which was not so open and obvious that the defendant was relieved of her duty to warn the plaintiff, we need not address whether the defendant committed a breach of her duty to remedy even an open and obvious danger.  See LaForce v. Dyckman, 96 Mass. App. Ct. 42, 46-47 (2019) (landowner has duty "to remedy an unreasonably dangerous yet obvious condition when the owner knows or has reason to know that visitors might nonetheless proceed to encounter the danger for a variety of reasons, including being distracted, forgetful, or even negligent"); Hale v. Beckstead, 2005 UT 24, ¶ 27 ("a possessor of land must protect invitees against dangers of which they are unaware, may forget, or may reasonably encounter despite the obviousness of the danger").
     Conclusion.  The judgment and the order denying the motion for judgment notwithstanding the verdict or for a new trial are affirmed.
 
So ordered.