WILLIAM DOCOS vs. JOHN MORIARTY & ASSOCIATES, INC.,
& another.[1]

No. 09-P-1566.

Suffolk. September 16, 2010. - January 24, 2011.

Present: LENK, KAFKER, & MILLS, JJ.

*Negligence,* Construction work, Open and obvious danger.

In a negligence action arising from injuries the plaintiff sustained at a construc-
tion site, the judge erred in allowing a motion for summary judgment in
favor of the general contractor on the construction project, where the
plaintiff raised triable issues with respect to the general contractor's duty
to remedy the danger posed by construction debris, the general contractor's
breach of that duty by permitting debris to persist at the site, and the
relationship of the debris to the plaintiff's injuries [640-643]; however, the
judge properly granted summary judgment in favor of a subcontractor,
where the plaintiff presented insufficient assertions of fact to connect the
subcontractor to his injuries or to the debris that might have contributed to
his injuries [643].

CIVIL ACTION commenced in the Superior Court Department on
January 13, 2006.

The case was heard by *Paul E. Troy,* J., on a motion for sum-
mary judgment.

*Christopher G. Timson* for the plaintiff.

*William J. Dailey, III,* for John Moriarty & Associates, Inc.

*Thomas M. Franco* for John A. Penney Co., Inc.

MILLS, J. The plaintiff, William Docos, brought a negligence
action against defendants John Moriarty & Associates, Inc.
(Moriarty), and John A. Penney Co., Inc. (Penney), for injuries
sustained at a construction site when a stack of sheetrock fell on
him. A Superior Court judge allowed the defendants' summary
judgment motion and dismissed the action. We affirm in part
and reverse in part.

---

[1]John A. Penney Co., Inc.

1. *Background.* We recite the material facts in the light most favorable to the nonmoving party, Docos. The standard is familiar. See *Global NAPs, Inc.* v. *Awiszus*, 457 Mass. 489, 499 n.16 (2010). Docos was a carpenter for a subcontractor hired by Moriarty, the general contractor performing construction at Boston Children's Hospital (project). Penney was an electrical subcontractor for the project.

The project appears to have had significant, persistent problems preventing and remedying the accumulation of dangerous construction debris. Moriarty's project superintendent, Richard Lennon, admitted that he had observed hazardous debris conditions several times, in violation of both Moriarty's legal obligations as set forth in applicable Occupational Safety and Health Act (OSHA) regulations and Moriarty's own health and safety program.[2] He further admitted that he failed to report these conditions properly under the procedures identified in the Moriarty health and safety program.[3] The record contains evidence that the project's debris problem impeded construction progress and that several workers, including Docos, complained about the hazards posed by debris.

On January 14, 2003, Docos's employer's foreman, Gil Rivard, directed Docos to go to a room on the second floor of the building to reconfigure the walls. Rivard told Docos that a laborer would assist him with that task, including moving sheetrock out of the way so Docos could access the wall. The sheetrock was leaning against the wall. Penney's five-foot-tall toolbox was in the center of the room, approximately four feet from

---

[2]When asked if he looked for "clutter," Lennon responded that he did, "[b]ecause it would constitute an unsafe condition." In response to the question, "Between . . . February or March of 2000 and January of 2003, was there ever a time that as you walked the project, that you saw unsafe conditions, specifically clutter, that you noted?" Lennon answered, "Yes." He later stated that he could not say that there was never a major safety issue on the project prior to January 14, 2003. Lennon further identified a portion of Moriarty's health and safety program which, quoting from the applicable OSHA regulations, stated, "A clean and neat work site is essential for a safe project. Plan and organize storage of all materials. Remove all debris to proper disposal containers daily."

[3]Lennon stated that when he discovered such conditions, he "would not put in a written warning." When asked if this failure to report violated Moriarty's safety policy, he replied, "Absolutely."

the stacked sheetrock. There were also large pieces of wood, electrical conduit, piping, and substantial other construction debris scattered on the floor of the room and throughout the adjacent contract area.

Docos attempted to look behind the sheetrock by pulling it away from the wall. He did so to determine if the wall had been marked to indicate that it was part of the reconfiguration project. When the sheetrock fell towards him, he tried to evade it but could not, due, in part, to the construction debris and the presence of Penney's toolbox. The sheetrock pinned Docos against the toolbox. Docos attempted to free himself but, because of the debris at his feet, could not. The sheetrock then collapsed on Docos, knocking him to the floor. Other workers came to his aid and removed the sheetrock. Docos claims that, as a result, he permanently lost full use of his right knee and has suffered substantial economic harm.

2. *Standard of review.* We review a judge's decision to grant summary judgment de novo. *Miller* v. *Cotter*, 448 Mass. 671, 676 (2007).[4] A defendant seeking summary judgment may carry its burden by showing that the plaintiff has no reasonable expectation of proving an essential element of his claim. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). After a defendant meets this burden, the plaintiff must show, with evidence, the existence of a material dispute as to the essential element. See *Godbout* v. *Cousens*, 396 Mass. 254, 261 (1985). If the plaintiff can do so, summary judgment is not proper. See Mass.R.Civ.P. 56(e), 365 Mass. 824 (1974).

3. *Discussion.* To sustain his negligence claim against each defendant, Docos needed to establish that the defendant owed him a legal duty, that the defendant breached that duty, and that the breach proximately caused his injuries. *Davis* v. *Westwood Group*, 420 Mass. 739, 742-743 (1995).

---

[4]Although we somewhat stand in the shoes of the motion judge and make an independent review of the same record, see *Molly A.* v. *Commissioner of the Dept. of Mental Retardation*, 69 Mass. App. Ct. 267, 268 n.5 (2007), and the judge's decision does not relieve us of our need to review the record independently, we are assisted here by the motion judge's thoughtful memorandum of decision. We also note that the motion judge did not have the benefit of the Supreme Judicial Court's recent statement of the law in this area in *Papadopoulos* v. *Target Corp.*, 457 Mass. 368 (2010).

a. *Moriarty.* The motion judge concluded that neither Moriarty nor Penney owed Docos a duty to warn of or remedy the open and obvious dangers posed by the stacked sheetrock. We agree with this conclusion[5] but reverse the judgment insofar as it dismissed the claims against Moriarty, as Docos has raised triable issues with respect to Moriarty's duty to remedy the danger posed by construction debris, Moriarty's breach of that duty by permitting debris to persist at the site, and the relationship of the debris to Docos's injuries.

We assume that the construction debris was an open and obvious danger which, *ordinarily*, negates all duties with respect to such danger. *O'Sullivan* v. *Shaw*, 431 Mass. 201, 204 (2000). However, "ordinarily" is not the equivalent of always. *Quinn* v. *Morganelli*, 73 Mass. App. Ct. 50, 55 (2008). The owner or person in control of property "is not relieved from remedying an open and obvious danger when it 'can and should anticipate that the dangerous condition will cause physical harm to [a lawful visitor] notwithstanding its known or obvious danger.' " *Papadopoulos* v. *Target Corp.*, 457 Mass. 368, 379 (2010) (*Papadopoulos*), quoting from *Soederberg* v. *Concord Greene Condominium Assn.*, 76 Mass. App. Ct. 333, 338 (2010) (*Soederberg*). See Restatement (Second) of Torts § 343A comment f, at 220 (1965). Specifically, where there is "reason to expect that the [lawful visitor] will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk," such a duty to remedy arises. *Papadopoulos*, *supra*, quoting from *Soederberg*, *supra*.

We conclude that Docos has raised an appropriate jury issue whether Moriarty, in these circumstances, could and should have anticipated that the presence of construction debris would cause physical harm to Docos notwithstanding its known or obvious danger.[6] The record contains evidence that Moriarty was aware of dangerous debris conditions and failed to address

---

[5]See *Lanza* v. *EQR-Lincoln Lawrence, LLC*, 69 Mass. App. Ct. 206 (2007), cited by the motion judge in his memorandum of decision.

[6]The record before us also raises triable issues of breach, causation, and damages, and Moriarty has not shown that Docos has no reasonable expectation of prevailing on these elements of his claim.

them pursuant to its own stated safety policy. The record also evidences that the room in which the accident occurred had enough debris in it two to three weeks prior to the accident to impede the work of Docos and others. Finally, the record describes the room on the morning of the accident as littered with substantial debris, such as "four by four" pieces of wood, other smaller pieces of wood, sections of pipe, and electrical conduit, covering the floor of the room.[7]

Viewed in the light most favorable to Docos, these specific facts show that the project's debris conditions constituted a greater hazard than that at a typical active construction site. Moriarty has come forward with no evidence to negate the specific facts set forth by Docos, such as photographs of the accident site as it appeared on January 14, 2003, or more detailed eyewitness descriptions.

This record therefore presents a genuine issue of fact about whether a reasonable person in Docos's position would conclude that the advantages of continuing to work in a setting more dangerous than the typical active construction site due to excessive debris would outweigh the apparent risk.[8] See *Papadopoulos*, 457 Mass. at 379; Restatement (Second) of Torts § 343A comment f & illustration 5 (1965) (identifying workplace hazard as a situation where a reasonable employee would conclude advantages of proceeding, despite risk, outweigh the danger of doing so). Cf. *Uloth* v. *City Tank Corp.*, 376 Mass. 874, 880

---

[7]Docos testified in his deposition that "there was stuff all over the floor" including "lots of pieces of wood," many of which were "four by fours." He also testified that there were "actually pieces of pipe, electrical conduit, stuff like that on the floor as well." In response to the question, "And did you have any problem walking in the room?" Docos testified, "I had to walk over stuff to get where I was going."

[8]Our decision today merely reaffirms that Moriarty, or any other general contractor, must conform to construction industry standard practices, rules set by applicable Federal or Massachusetts regulations, and its own company policies on safety, including any contractually assumed obligations; we do not create or impose a more exacting standard. Cf. *Wasserman* v. *Agnastopoulos*, 22 Mass. App. Ct. 672, 679 (1986) (G. L. c. 93A "does not contemplate an overly precious standard of ethical or moral behavior. It is the standard of the commercial market place . . ."). If the summary judgment record contains specific facts showing a failure to comply with standard industry practices, relevant Federal regulations, and the company's own safety policy, as the record does here, then a general contractor like Moriarty cannot rely on the open and obvious danger rule to negate its duty of care.

(1978) (discussing unavoidable workplace hazards in products liability context). Accordingly, this record raises a genuine issue of material fact whether Moriarty had a duty to remedy the open and obvious danger of the construction debris, and summary judgment for Moriarty was not proper.[9]

b. *Penney*. No genuine issue of fact exists as to Docos's claim against Penney. Docos has presented insufficient assertions of fact to connect Penney to his injuries or to the debris that may have contributed to his injuries. This record fails to show a sufficient nexus between Penney and the construction debris in the area where the accident took place. Moreover, the record does not contain specific facts supporting the conclusion that the toolbox was a danger not present at a typical active construction site or that its presence violated any relevant legal or contractual obligation. No triable issue exists as to Penney's duty to remedy any potential danger caused by the toolbox. Summary judgment for Penney was proper.

4. *Conclusion*. The judgment is affirmed insofar as it dismissed the complaint against Penney. In all other respects, the judgment is reversed. The matter is remanded for further proceedings not inconsistent with this opinion.

*So ordered.*

---

[9]Although we shall reverse the summary judgment in favor of Moriarty on this basis, on remand, Moriarty is free to raise all other applicable defenses.