# DECISIONS

### OF THE

## APPEALS COURT

### OF

## MASSACHUSETTS

---

CLEBER COLETA DOS SANTOS[1] & another[2] *vs.* MARIA A.
COLETA & another.[3]

No. 10-P-2184.

Suffolk. October 4, 2011. - December 1, 2011.

Present: GRASSO, BROWN, & KANTROWITZ, JJ.

Further appellate review granted, 461 Mass. 1110 (2012).

*Negligence,* Swimming pool, Open and obvious danger, Duty to warn. *Practice,
Civil,* Instructions to jury.

Discussion of the law imposing a duty on a landowner when a visitor is
  injured by an open and obvious danger. [4-5]
In a civil action arising from an accident on the defendants' property in which
  one of the plaintiffs suffered a catastrophic spinal cord injury upon at-
  tempting a "flip" from a trampoline into a shallow, inflatable pool, the
  judge properly instructed the jury on the open and obvious danger rule,
  where the injured plaintiff's intentional maneuver posed, to a person of
  average intelligence, an obvious risk of possible injury. [5-6]

---

[1]Individually and as father and next friend of Bryan Coleta.
[2]Keila Coleta.
[3]Jose T. Coleta.

CIVIL ACTION commenced in the Superior Court Department on July 25, 2008.

The case was tried before *Mitchell H. Kaplan*, J.

*Lisa DeBrosse Johnson* (*Steven E. Erinstoff* with her) for the plaintiffs.

*Mark F. Mahnken* for the defendants.

KANTROWITZ, J. This appeal arises from a personal injury action brought by Cleber Coleta Dos Santos (Dos Santos), his wife, and his son against Jose T. Coleta (Dos Santos's brother-in-law) and Maria A. Coleta (Dos Santos's sister-in-law), claiming damages for negligence, failure to warn, and loss of consortium following an accident on the defendants' property in which Dos Santos broke his neck, rendering him a quadriplegic. The jury returned a verdict for the defendants. At issue here is the propriety of the judge's instructions to the jury and the form of a special jury question submitted by the judge. Because, based on the evidence presented, the judge correctly charged the jury on the "open and obvious danger" rule, we affirm.

*Facts.* On August 2, 2005, Dos Santos suffered a catastrophic spinal cord injury when he sustained a burst fracture of his C-5 vertebrae, resulting in permanent paralysis from the upper chest down. The accident occurred in the backyard of the two-family home owned by the defendants. Prior to moving to South Carolina a few days before the accident, the defendants lived in one unit of the home with their three children. The defendants rented the other unit to the plaintiffs.

Sometime prior to June 18, 2005, Jose Coleta set up an inflatable vinyl pool in the backyard of the home. At some point on or about June 18, he also installed a trampoline, which his son had received as a birthday present, next to the pool. The pool was approximately two feet deep, while the trampoline was three feet high. During the summer of 2005, the pool and trampoline were frequently used by the Coleta children and family friends. The plaintiffs and defendants testified that they observed children and adults jumping from the trampoline into the pool on many occasions.

On July 31, 2005, the defendants and their children moved to South Carolina. However, they maintained ownership of the two-family home and continued to rent the other unit of the home to

Dos Santos and his family. The defendants left the pool and trampoline in the backyard at the time of their move, and they understood that these items would continue to be used by their friends and family.[4]

A few days later, on August 2, 2005, Dos Santos returned home from work and spent time playing with his son on the trampoline while his wife recorded a videotape of them to be sent to their extended family in Brazil. After a few minutes of jumping on the trampoline, Dos Santos decided to try to "flip over and sit on [his] butt in the water." Footage from the home videotape, which was presented as evidence at trial, shows Dos Santos's attempt to perform a front flip into the pool. His attempt was unsuccessful. Dos Santos struck the bottom of the pool, breaking his neck, resulting in permanent injuries.

Officer Krishtal of the Framingham police department responded to the accident. According to Krishtal, immediately following the accident, while awaiting the arrival of emergency medical services, Dos Santos stated that he "dove into the pool from the trampoline and landed on his head." Likewise, the officer noted that Dos Santos's wife, Keila, stated that she was "video-taping her husband playing on top of the trampoline when he decided to dive into the pool." Police officers at the scene of the accident took photographs of the trampoline and pool, which showed the pool manufacturer's warning label printed on its side, cautioning against jumping and diving. The warning appeared in six languages, including Portuguese, Dos Santos's native language. The warning label also included pictographs cautioning against jumping and diving.

Following the accident, Dos Santos was hospitalized for an extended period at Beth Israel Deaconess Medical Center and Spaulding Rehabilitation Hospital, and in the years since the accident, he has been hospitalized at various facilities for medical conditions related to his quadriplegia. At the time of trial, he had incurred $728,702 in medical bills. Dos Santos also testified that his medical condition adversely affected all aspects of his life, including his relationships with his wife and child.

---

[4]Although the parties do not address this point, we note that when the defendants moved from the area, Dos Santos, who had lived in the home for ten months, was ostensibly in a superior position to remedy the very condition about which he now complains.

At trial, the plaintiffs requested a specific jury instruction and special jury question that the judge declined to give. This forms the basis of the appeal. The jury found in favor of the defendants, and judgment entered accordingly. The plaintiffs filed a timely appeal.

*The law.* In general, the current law on imposing a duty on a landowner when the plaintiff is injured by an open and obvious danger derives from *O'Sullivan* v. *Shaw*, 431 Mass. 201 (2000). There, the plaintiff attempted to dive headfirst into shallow water after observing others similarly dive into a pool. *Id.* at 202-203. The plaintiff tried to clear the length of the shallow end by performing a "racing dive," with the intention of emerging at the deep end of the pool. *Id.* at 203. However, due to the steep angle of his dive, he struck his head on the bottom of the pool, fracturing his cervical vertebrae. *Ibid.* While the plaintiff in *O'Sullivan* understood that there was a risk of injury in diving in the shallow end, he undertook the dive believing that he would be able to avoid injury despite the danger. *Ibid.* The court stated:

> "under our law of premises liability, the standard for determining whether a landowner is relieved of a duty to warn is whether the dangerous condition complained of would be obvious to a person of average intelligence, that is, a visitor with ordinary perception and judgment exercising reasonable care for his own safety. That many people might engage in objectively hazardous conduct on the basis of a belief that it can be done safely does not affect our analysis of a defendant's duty of care under this standard if, in light of the obvious risks entailed by the activity, the belief in question, however prevalent it may be, must nonetheless fairly be judged unreasonable, if not foolhardy."

*Id.* at 208.

"[A]n open and obvious danger [however] . . . will not always relieve a property owner of the duty to use reasonable care in making the property safe for lawful visitors." *Papadopoulos* v. *Target Corp.*, 457 Mass. 368, 379-380 (2010). A duty to warn may "arise where the possessor has reason to expect that the invitee will proceed to encounter the known or

obvious danger because to a *reasonable* man in his position the *advantages of doing so would outweigh* the apparent risk" (emphasis added). Restatement (Second) of Torts § 343A comment f, at 220 (1965).[5] See *Papadopoulos* v. *Target Corp.*, *supra* at 379 (§ 343A comment f cited with approval); *Soederberg* v. *Concord Greene Condominium Assn.*, 76 Mass. App. Ct. 333, 339 (2010) ("people will engage snow or ice hazards lying in well-traveled pathways, even if those hazards are open and obvious"); *Docos* v. *John Moriarty & Assocs., Inc.*, 78 Mass. App. Ct. 638, 642 (2011) ("advantages of continuing to work in a setting more dangerous than the typical active construction site due to excessive debris would outweigh the apparent risk"). Compare *Quinn* v. *Morganelli*, 73 Mass. App. Ct. 50, 55 (2008).

*Jury instruction.* The plaintiffs' written request for a jury instruction, modeled after *Quinn, supra, Soederberg, supra,* and § 343A of the Restatement, stated:

> "The duty of a property owner to exercise reasonable care 'includes an obligation to maintain the property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk.' *Quinn* v. *Morganelli*, 73 Mass. App. Ct. 50, 52 (2008)[.]

> "A property owner is not 'relieved from remedying open and obvious dangers where he [or she] can and should anticipate that the dangerous condition will cause physical harm to [someone lawfully on the premises] notwithstanding its known or obvious danger.' *Soederberg* v. *Concord Greene Condominium Assoc.*, 76 Mass. App. Ct. 333, 338 (2010)[.]"

After discussion with the parties and consideration of the matter, the judge instructed the jury along the lines of *O'Sullivan* v. *Shaw, supra,* as follows:

> "[A] landowner's duty to protect lawful visitors against dangerous conditions on his property ordinarily does not

---

[5]Other examples given include where "the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." *Ibid.*

> extend to dangers that would be obvious to persons of
> average intelligence. This is often referred to as the open
> and obvious danger rule. If the particular dangers inherent
> in a particular condition would be open and obvious to a
> person of average intelligence then the landowner does not
> have a duty to warn the visitor to avoid encountering the
> danger. The standard is an objective one, that is, would a
> reasonable person of average intelligence be aware of the
> open and obvious danger of the condition."

On the facts of this case, we cannot say that the jury instructions given were improper.

Dos Santos attempted a front flip from a trampoline into a shallow, inflatable pool. While the parties are careful to distinguish between "diving," "jumping," and "flipping" into the pool, ultimately, regardless of how one might describe it, the intentional maneuver posed, to a person of average intelligence, an obvious risk of possible injury. In this regard we agree with the trial judge that the instant case is "very much, if not on all fours with *O'Sullivan.*"

Section 343A of the Restatement, *Soederberg*, and *Papadopoulos* involve a cost-benefit determination in which the action taken in the face of an open and obvious unsafe condition is theoretically overcome by the benefit accrued, e.g., walking on ice and snow to get to a parked car. Here, no similar cost-benefit analysis existed. Rather, Dos Santos unfortunately made a "foolhardy" decision to attempt a risky maneuver in a shallow pool. *O'Sullivan* v. *Shaw*, 431 Mass. at 208. A property owner would have no reason to anticipate that a reasonable person of average intelligence would conclude that the advantage of performing the maneuver outweighed the risk of serious injury. *Ibid.* As such, we agree with the trial judge that the Restatement (Second) of Torts § 343A does not apply where Dos Santos made a conscious decision to engage in overtly risky conduct of his own volition. The law of *O'Sullivan* thus controls, and the judge did not err in giving a jury instruction based upon that case.[6]

*Conclusion.* A judge's function is to structure the final jury instructions based upon the evidence of the case. As no view of

---

[6]Given our decision today, we also conclude that the judge's special jury question, based upon *O'Sullivan* v. *Shaw*, *supra*, was proper.

the evidence required an instruction pursuant to *Soederberg*, *supra*, the exception did not apply and the judge properly instructed based upon the governing law of *O'Sullivan* v. *Shaw*, *supra*.[7]

*Judgment affirmed.*

---

[7]To the extent the plaintiffs wish us to revisit the Supreme Judicial Court's decision in *O'Sullivan* v. *Shaw*, *supra*, we are powerless to do so. See *Burke* v. *Toothaker*, 1 Mass. App. Ct. 234, 239 (1973); *Commonwealth* v. *Healy*, 26 Mass. App. Ct. 990, 991 (1988).