CLEBER COLETA DOS SANTOS[1] & another[2] vs. MARIA A.
COLETA & another.[3]

Suffolk. January 10, 2013. - May 15, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Negligence,* One owning or controlling real estate, Swimming pool, Open and
obvious danger, Duty to warn, Standard of care. *Practice, Civil,* Instruc-
tions to jury.

In a civil action arising from an accident on the defendants' property in which
one of the plaintiffs suffered a spinal cord injury upon attempting a flip
into an inflatable pool from a trampoline that one defendant had set up
directly adjacent to the pool for the purpose of enabling people to jump
from the trampoline into the pool, the judge, in instructing the jury, erred
in directing them to cease deliberation if they concluded that the danger
was open and obvious, where, on the facts of the case (i.e., that the defendants
had created and maintained the danger with the knowledge that lawful
entrants on the property would, and did, choose to encounter it despite the
obvious risk of doing so), the jury were entitled to conclude that the
defendants owed a duty of care — specifically a duty to remedy — despite
the open and obvious nature of the danger [153-163]; further, the judge
should have posed a special question to the jury directing them to determine
whether, as a matter of fact, the defendants reasonably could and should
have anticipated that someone would be injured as a result of jumping
from the trampoline into the pool [163].

CIVIL ACTION commenced in the Superior Court Department on
July 25, 2008.

The case was tried before *Mitchell H. Kaplan,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Lisa DeBrosse Johnson (Steven E. Ernstoff* with her) for the
plaintiffs.

*Mark F. Mahnken* for the defendants.

[1] Individually and as father and next friend of Bryan Coleta.
[2] Keila Coleta.
[3] Jose T. Coleta.

*Timothy C. Kelleher & J. Michael Conley*, for Massachusetts Academy of Trial Attorneys, amicus curiae, submitted a brief.

CORDY, J. The plaintiff Cleber Coleta Dos Santos was injured when he unsuccessfully attempted to flip into an inflatable pool from a trampoline that had been set up directly adjacent to it in the backyard of a property he was renting from the defendants, Maria A. and Jose T. Coleta.[4] He brought an action in the Superior Court against the defendants, claiming that they were negligent in setting up and maintaining the trampoline next to the pool and in failing to warn him of the danger of jumping from the trampoline into the pool.[5] The jury returned a verdict for the defendants. The plaintiff appealed, arguing that the judge erred in instructing the jury on the "open and obvious danger" rule without giving a requested instruction on a recognized exception to that rule, based on the Restatement (Second) of Torts § 343A, at 220 (1965) (§ 343A), and posing a corresponding special question. The Appeals Court affirmed, *Dos Santos* v. *Coleta*, 81 Mass. App. Ct. 1 (2011) (*Dos Santos*), and we granted the plaintiff's application for further appellate review. Because we conclude that a landowner has a duty to remedy an open and obvious danger, where he has created and maintained that danger with the knowledge that lawful entrants would (and did) choose to encounter it despite the obvious risk of doing so, we now reverse.[6]

1. *Evidence at trial.* In the summer of 2005, the plaintiff lived with his wife and son in one unit of a two-family home in Framingham that he rented from the defendants. The defendants and their children lived in the other unit before moving to South Carolina on July 31, 2005. On or about June 18, 2005, the defendants' son received a trampoline as a birthday gift. Jose set up the trampoline immediately adjacent to an inflatable vinyl swimming pool that he had set up in the backyard earlier

---

[4]Jose T. Coleta is the plaintiff's half-brother, and Maria A. Coleta is Jose's wife and the plaintiff's sister-in-law. Because they share a surname, we refer to the Coletas individually by their first names.

[5]Dos Santos's wife, Keila Coleta, and son, Bryan Coleta, joined in the suit, claiming loss of consortium resulting from Dos Santos's injury. For the sake of clarity, except where noted, we refer to a single plaintiff in the discussion that follows.

[6]We acknowledge the amicus brief of the Massachusetts Academy of Trial Attorneys.

that spring. Although the backyard was large enough to allow the trampoline and pool to be placed apart from each other, Jose set up the trampoline directly beside the pool because he had seen it done before at other houses and wanted to enable persons to jump from the trampoline into the pool. The pool was approximately two feet deep, and the trampoline was three feet high. The trampoline was accessible by two ladders, one of which was placed directly in the pool. Jose disregarded warnings printed on the side of the pool cautioning against jumping or diving into the pool. He knew that setting up the trampoline next to the pool might be dangerous but thought it would be "fun."

During the summer of 2005, the plaintiff's and defendants' children and visitors to the home frequently used the pool and trampoline, and the defendants were aware that people were jumping from the trampoline into the pool. Maria testified that she told her children not to jump from the trampoline into the pool and that she knew that it was dangerous to do so. However, neither defendant stopped the children from using the trampoline and pool in this manner or took any steps, such as moving the trampoline and pool apart, to discourage or prevent anyone from jumping from the trampoline into the pool.

Although the defendants moved to South Carolina on July 31, they maintained ownership of the home and continued to rent the other unit to the plaintiff and his family. The defendants left the pool and trampoline in the backyard and understood that both items would continue to be used by their friends and family.

On the evening of August 2, 2005, the plaintiff, who had never before used the trampoline, came home from work and decided to play with his son on the trampoline while his wife recorded a video of them to send to their extended family in Brazil. The plaintiff decided to entertain his son by flipping into the pool. The plaintiff testified that he was trying to "flip over and sit on [his] butt in the water." The video recording, a portion of which was shown to the jury at trial, shows the plaintiff attempting to perform a front flip into the pool. The plaintiff severely underrotated the flip, entered the water headfirst, and struck his head on the bottom of the pool. As a result of the impact, the plaintiff sustained a burst fracture of his C-5 vertebrae, and is permanently paralyzed from the upper chest down.

Officer Val Krishtal of the Framingham police department responded to the scene of the accident. He testified that immediately following the accident, while awaiting the arrival of emergency medical services, the plaintiff stated that he "dove into the pool from the trampoline and landed on his head."[7] Police officers at the scene took photographs of the trampoline and pool, which showed the pool manufacturer's warning label printed on the side cautioning against jumping and diving. The warning appeared in six languages, including Portuguese, the plaintiff's and defendants' native language. The label also included pictographs conveying the same warning.

The plaintiff was hospitalized for an extended period of time following the accident, and in the years since, he has been hospitalized at various facilities for medical conditions related to his quadriplegia. His medical bills and related expenses exceeded $700,000 at the time of trial.

2. *Request for jury instructions.* Although he instructed the jury on the "open and obvious danger" doctrine, the trial judge declined to give the plaintiff's requested instruction based on the Restatement (Second) of Torts, *supra* at § 343A(1) & comment f, which contemplates that a landowner may in certain circumstances be liable for injuries resulting from open and obvious dangers.[8,9] Rather, after instructing the jury on a

---

[7]Citing this piece of testimony, the defendants suggest in their brief that the plaintiff was attempting a dive when he was injured. Because the closing arguments are not included in the record, it is unknown whether the defendants made this argument to the jury. In light of the other evidence adduced at trial, the jury may well have concluded that the plaintiff's statement to Officer Krishtal that he "dove" was consistent with the fact that his failed attempt at a flip ultimately resembled a dive, or that, given the circumstances, the plaintiff conveyed only basic information to Officer Krishtal regarding the mechanism of his injury. Ultimately, for reasons explained below, whether the plaintiff was attempting a flip or dive is irrelevant to the issue before us on appeal.

[8]Restatement (Second) of Torts § 343A(1), at 220 (1965), provides:

"A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."

Comment f further expands on this doctrine, providing:

"There are, however, cases in which the possessor of land can and

landowner's duty of care, he provided them with the following instructions on the open and obvious danger doctrine:

"[A] landowner's duty to protect lawful visitors against dangerous conditions on his property ordinarily does not extend to dangers that would be obvious to persons of average intelligence. This is often referred to as the open and obvious danger rule. If the particular dangers inherent

should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

"Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk . . . . It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances."

[9]The plaintiff requested the following instructions be given to the jury:

"The duty of a property owner to exercise reasonable care 'includes an obligation to maintain the "property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk." ' *Quinn* v. *Morganelli*, 73 Mass. App. Ct. 50, 52 (2008)[.]"

"A property owner is not 'relieved from remedying open and obvious dangers where he [or she] "can and should anticipate that the dangerous condition will cause physical harm to [someone lawfully on the premises] notwithstanding its known or obvious danger." ' *Soederberg* v. *Concord Greene Condominium Ass'n*, 76 Mass. App. Ct. 333, 338 (2010)[.]"

The plaintiff also requested the following corresponding special question: "Was it foreseeable that someone would be injured as a result of jumping from the trampoline into the swimming pool that the defendants set up and maintained on their property?"

in a particular condition would be open and obvious to a person of average intelligence, then the landowner does not have a duty to warn the visitor to avoid encountering the danger. The standard is an objective one, that is, would a reasonable person of average intelligence be aware of the open and obvious danger of the condition?"

The jury were further instructed:

"In the present case, it is undisputed that defendants had a trampoline and inflatable pool in their backyard. At the time of the accident, August 2nd, 2005, the pool and the trampoline were next to one another. In deciding whether the defendants, Maria and Jose, owed a duty to [the plaintiff], you must decide whether the dangerous condition that he encountered and which caused his injury was open and obvious to a person of average intelligence, having in mind the particular activity in which [the plaintiff] was engaged at the time of the accident. Whether other people may have engaged in this activity may be considered by you, but the question that you must decide is whether the danger of injury from engaging in this activity with the trampoline and the pool was open and obvious to a person of average intelligence. Apply this analysis in answering the first question on the verdict form. *If your answer is yes, your work is done.* Date and sign the form. If your answer is no, then you go to the next question which involves negligence." (Emphasis added.)

The judge then instructed the jury on negligence, including instructions on foreseeability. The first question on the verdict slip, special question no. 1, asked: "Was the dangerousness of the condition that [the plaintiff] encountered on the defendant's property and that caused his injury open and obvious to a person of average intelligence, having in mind the particular activity in which he was engaged at the time of the accident?" The jury answered, "Yes," in response to special question no. 1, and the court entered judgment for the defendants.

3. *Discussion.* a. *Standard of review.* "We review objections to jury instructions to determine if there was any error, and, if so, whether the error affected the substantial rights of the object-

ing party." *Hopkins* v. *Medeiros*, 48 Mass. App. Ct. 600, 611 (2000). See Mass R. Civ. P. 61, 365 Mass. 829 (1974).

b. *The "open and obvious danger" rule.* "Before liability for negligence can be imposed, there must first be a legal duty owed by the defendant to the plaintiff, and a breach of that duty proximately resulting in the injury." *Davis* v. *Westwood Group*, 420 Mass. 739, 742-743 (1995). An owner or possessor of land owes a common-law duty of reasonable care to all persons lawfully on the premises. *Id.* at 743. This duty includes an obligation to maintain the "property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk." *Mounsey* v. *Ellard*, 363 Mass. 693, 708 (1973). It also includes an obligation "to warn visitors of any unreasonable dangers of which the landowner is aware or reasonably should be aware." *Davis* v. *Westwood Group, supra*, and cases cited. However, "[l]andowners are relieved of the duty to warn of open and obvious dangers on their premises because it is not reasonably foreseeable that a visitor exercising (as the law presumes) reasonable care for his own safety would suffer injury from such blatant hazards." *O'Sullivan* v. *Shaw*, 431 Mass. 201, 204, 211 (2000) (*O'Sullivan*) (holding landowner had no duty to warn visitor of open and obvious risk of diving into shallow end of in-ground pool). The landowner has no duty to warn of such hazards "because the warning would be superfluous for an ordinarily intelligent plaintiff." *Papadopoulos* v. *Target Corp.*, 457 Mass. 368, 379 (2010) (*Papadopoulos*), citing *O'Sullivan, supra* at 206. A landowner, though, "is not relieved from remedying an open and obvious danger where [the landowner] 'can and should anticipate that the dangerous condition will cause physical harm to the [lawful visitor] notwithstanding its known or obvious danger.' " *Papadopoulos, supra*, quoting *Soederberg* v. *Concord Greene Condominium Ass'n*, 76 Mass. App. Ct. 333, 338 (2010) (*Soederberg*), quoting Restatement (Second) of Torts, *supra* at § 343A comment f.

Today, we consider the scope of a landowner's duty to remedy an open and obvious danger as contemplated in § 343A and most recently discussed by this court in *Papadopoulos, supra.* As an initial matter, it is clear that at least in some circumstances

"[s]hould the jury ultimately conclude that the danger was, in fact, open and obvious, the question . . . remain[s] whether the plaintiff nevertheless may recover on a duty to remedy theory." *Quinn* v. *Morganelli*, 73 Mass. App. Ct. 50, 54 (2008) (*Quinn*). To the extent there was any doubt regarding whether Massachusetts recognizes this "exception" to the open and obvious danger rule, see *id.* at 55, our decision in *Papadopoulos, supra,* explicitly reaffirmed our view that the existence of an open and obvious danger will not necessarily relieve a landowner of the duty to remedy that danger. The trial judge evidently did not believe that the exception set forth in § 343A, and invoked in *Papadopoulos* and *Soederberg,* applied on the facts of this case, as his instructions to the jury omitted it.

Having established that the existence of an open and obvious danger will not necessarily relieve a landowner of *all* duties to lawful entrants with regard to that danger, we set out to answer the following principal question: where the duty to warn has been negated, in what circumstances will the duty to remedy nevertheless exist — or, in other words, in what circumstances "can and should [a landowner] anticipate that the dangerous condition will cause physical harm to the [lawful entrant] notwithstanding its known or obvious danger"? *Papadopoulos, supra,* quoting *Soederberg, supra.* Section 343A states in relevant part:

> "Such reason to expect harm to the [lawful entrant] from known or obvious dangers may arise, *for example,* where the [landowner] has reason to expect that the [lawful entrant's] attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the [landowner] has reason to expect that the [lawful entrant] will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." (Emphasis added.)

Restatement (Second) of Torts, *supra* at § 343A comment f. As the defendants assert, reported cases in the Commonwealth applying § 343A have generally rested their conclusion that a landowner can and should anticipate a particular harm on a

finding that "a reasonable man in [the plaintiff's] position [would conclude] the advantages of [encountering the danger] would outweigh the apparent risk." *Papadopoulos, supra* at 379-380 (duty to remedy exists where experience dictates that visitors will often choose to cross snow or ice-covered walkways despite risk); *Docos* v. *John Moriarty & Assocs., Inc.*, 78 Mass. App. Ct. 638, 642 (2011) (*Docos*) (fact finder could conclude "advantages of continuing to work in a setting more dangerous than the typical active construction site due to excessive debris would outweigh the apparent risk"); *Soederberg, supra* at 339 (noting "examples [from the case law] demonstrate that it is entirely foreseeable that people will engage snow or ice hazards lying in well-traveled pathways, even if those hazards are open and obvious"). Based on its reading of these cases, the Appeals Court concluded that "[§ 343A] . . . involves[s] a cost-benefit determination in which the action taken in the face of the open and obvious unsafe condition is theoretically overcome by the benefit accrued, e.g., walking on ice and snow to get to a parked car. Here, no similar cost-benefit analysis existed." *Dos Santos, supra* at 6.

Critically, however, by its own language, application of § 343A is not limited to situations where the plaintiff encounters the danger only after concluding the benefit of doing so outweighs the risk. See *Quinn, supra* at 50-52, 54-55 & n.7. The illustrations accompanying § 343A comment f are clearly meant to be illustrative, not exhaustive. See Restatement (Second) of Torts, *supra* at § 343A comment f & illustrations 2-5. The main text of § 343A merely states that a landowner is not liable for injuries caused by open and obvious dangers "unless the [landowner] should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts, *supra* at § 343A(1). As the illustrations accompanying § 343A comment f indicate, § 343A contemplates that a lawful entrant's encounter with an open or obvious hazard may in some instances be a result of the entrant's own negligence. See Restatement (Second) of Torts, *supra* at § 343A illustrations 2-4 (explaining landowner has a duty to remedy open and obvious dangers that he can reasonably anticipate lawful entrants will nonetheless encounter due to their being distracted, failing to look, or initially observ-

ing the condition but subsequently forgetting to avoid it). Indeed, this makes sense, as an open and obvious danger is by definition a danger that a reasonable person needs no warning to avoid. *O'Sullivan, supra* at 204. That § 343A contemplates a situation where the plaintiff's own failure to exercise reasonable care causes him to encounter the danger is further evidenced by its recognition that "the fact that the danger is known, or is obvious," is relevant to determining a plaintiff's comparative negligence.[10] See Restatement (Second) of Torts, *supra* at § 343A comment f.

Section 343A thus instructs that although a duty to warn of an open and obvious danger would be superfluous because an open and obvious danger provides its own warning, a landowner

---

[10]As the Appeals Court noted and the defendants assert, the court in *O'Sullivan* v. *Shaw*, 431 Mass. 201, 208 (2000) (*O'Sullivan*), stated:

> "That many people might engage in objectively hazardous conduct on the basis of a belief that it can be done safely does not affect our analysis of a defendant's duty of care under this standard if, in light of the obvious risks entailed by the activity, the belief in question, however prevalent it may be, must nonetheless fairly be judged unreasonable, if not foolhardy."

First, as will be discussed *infra*, *O'Sullivan* addressed only whether there existed a duty to warn; it did not address any potential duty to remedy as none was alleged or supportable on the facts of that case. See *id.* at 201-203, 206-208. Second, to the extent this statement from *O'Sullivan* appears in any way inconsistent with our ruling today, we have stated much more recently in *Papadopoulos* v. *Target Corp.*, 457 Mass. 368 (2010) (*Papadopoulos*), that "[o]ur case law is replete with examples of people who, upon encountering snow or ice hazards, nevertheless continued to venture forward in the belief that they could do so safely if they proceeded with care." *Id.* at 379, quoting *Soederberg* v. *Concord Greene Condominium Ass'n*, 76 Mass. App. Ct. 333, 338-339 (2010) (*Soederberg*). Therefore, we recognized in *Papadopoulos, supra*, quoting *Soederberg, supra*, that the prevalence with which lawful entrants encountering an open and obvious hazard believe it can be encountered safely is relevant to the question whether the landowner "can and should anticipate that the dangerous condition will cause physical harm to the [lawful entrant] notwithstanding its known or obvious danger." Of course, as the Restatement contemplates, and the plaintiff here concedes, the reasonableness of the plaintiff's decision to encounter the obvious risk bears on the question of his comparative fault for his injury. Restatement (Second) of Torts, *supra* ("the fact that the danger is known, or is obvious, is important in determining whether the [lawful entrant] is to be charged with [comparative negligence]"). "It is not, however, conclusive in determining the duty of the [landowner], or whether he has acted reasonably under the circumstances." *Id.*

is not relieved from remedying that danger where he knows or has reason to know that lawful entrants may not heed the warning for a variety of reasons, including their own failure to exercise reasonable care. In cases where the only viable theory of negligence is a negligent failure to warn, the open and obvious nature of the danger causing the injury will therefore relieve the landowner of any duty vis-à-vis that danger.[11] See *O'Sullivan, supra.* In cases where a negligent failure to warn is not the only viable theory of negligence, such as where the plaintiff alleges negligent design, see *Quinn, supra* at 52; Godsoe *vs.* Maple Park Props., Inc., U.S. Dist. Ct., No. 06-10405-DPW, at 12 (D. Mass. Aug. 9, 2007); Martins *vs.* Healy, Mass. Super. Ct., No. 005359 (July 10, 2002), or negligent failure to comply with a company safety policy, see *Docos, supra* at 641-642, the landowner may still owe a duty to the lawful entrant to remedy an open and obvious danger.

In affirming judgment for the defendants, the Appeals Court essentially concluded that the *O'Sullivan* case controlled because it effectively established a per se rule of nonliability in "shallow diving" cases. See *Dos Santos, supra* at 6. Additionally, in addressing the effect, if any, of the *Papadopoulos* and *Soederberg* line of cases on *O'Sullivan,* the Appeals Court further reasoned that those cases are distinguishable from "shallow diving" cases, including the present case, on the grounds that a "property owner would have no reason to anticipate that a reasonable person of average intelligence would conclude that the advantage of performing the maneuver [i.e., a flip or dive] outweighed the risk of serious injury." *Dos Santos, supra.* The

---

[11]We acknowledge that the text of § 343A comment f states that where a landowner can and should anticipate that a lawful entrant will encounter an open and obvious danger, he owes a duty to that entrant, and that "[t]his duty *may require him to warn* the [entrant], or to take other reasonable steps to protect him, against the known or obvious condition or activity . . ." (emphasis added). Restatement (Second) of Torts, *supra* at § 343A comment f. To the extent that § 343A thus contemplates that the residual duty owed by a landowner in regard to open and obvious dangers may include a duty to warn (as opposed to a duty to remedy), it is contrary to our holding in this case and the established law of the Commonwealth. See *Papadopoulos, supra* at 379; *O'Sullivan, supra* at 204; *Quinn* v. *Morganelli,* 73 Mass. App. Ct. 50, 54 (2008) (*Quinn*); Godsoe *vs.* Maple Park Props., Inc., U.S. Dist. Ct., No. 06-10405-DPW, at 12 (D. Mass. Aug. 9, 2007).

Appeals Court thus relied heavily on the plaintiff's " 'foolhardy' decision to attempt a risky maneuver in a shallow pool" in concluding that the defendants could not and should not have anticipated that the plaintiff would suffer injury as a result of the open and obvious danger posed by the trampoline-pool combination. *Dos Santos, supra,* quoting *O'Sullivan, supra* at 208. We take a somewhat different view.

First, as previously discussed, application of § 343A is not limited to situations where the plaintiff chooses to encounter the danger only after conducting a favorable "cost-benefit" analysis. A plaintiff's own negligence in encountering the danger does not relieve the landowner of a duty to remedy that danger where the plaintiff's negligent act can and should be anticipated by the landowner. Second, as the defendants' own testimony made quite clear, Jose set up the trampoline next to the pool with the specific intent to enable the type of use that resulted in the plaintiff's injury, and both defendants knew that the trampoline and pool were in fact being used in this manner and that this use was dangerous. Therefore, it is simply incorrect to say the defendants did not anticipate the risk of injury.

Because the trial judge relied so heavily on the *O'Sullivan* case — stating that the present case is "very much, if not on all fours with *O'Sullivan*" — in declining to give the plaintiff's requested instruction and instead instructing the jury to cease deliberations if they concluded the danger was open and obvious, we turn now to that case. In *O'Sullivan, supra* at 201-202, this court affirmed a grant of summary judgment for the defendant homeowners on claims that they "were negligent in allowing visitors to dive into the shallow end of [an in-ground] pool and in failing to warn of the danger associated with this activity." In addition to the obvious fact that both cases involve injuries sustained by jumping or diving into shallow pools, the trial judge relied on *O'Sullivan* presumably for its statement that "the open and obvious danger rule . . . operates to negate the existence of a duty of care," and its citation to a long line of cases from across the country holding landowners not liable for injuries caused by shallow diving on the grounds that the danger posed by such activity is open and obvious. *Id.* at 206, 207-208.

From this, the judge apparently concluded that *O'Sullivan* stands for the proposition that the existence of an open and obvious danger negates *any* duty of a landowner to protect lawful entrants from harm caused by that danger, at least insofar as the plaintiff made the unwise decision to encounter the danger. In light of our recognition of § 343A, that conclusion was incorrect. Nevertheless, some confusion is understandable, as it has been noted that (at least prior to *Papadopoulos*)[12] "[o]ur case law [had] not squarely addressed" whether a landowner may have a duty to remedy an open and obvious danger in certain circumstances. *Quinn, supra* at 54.

A close reading of *O'Sullivan, supra* at 201-202, 206-208, suggests that while the court may have used the terms "duty to warn" and "duty of care" interchangeably, it is relatively clear that the only question presented to the court in that case was whether the defendants could be held liable for failing to warn the plaintiff not to dive into the shallow end of an in-ground swimming pool. See *Quinn, supra* at 54-55; Martins *vs.* Healy, *supra* ("in *O'Sullivan*, the plaintiff did not allege that the pool was defective for having a shallow end; the sole basis there for claiming that the landowners had failed to maintain the pool in a reasonably safe condition was the failure to warn"). There was no suggestion in *O'Sullivan* that there was anything unusual or unsafe about the design, installation, or maintenance of the pool.[13] Nor could the plaintiff apparently have made such a claim; the pool was by all accounts a typical pool, with a shal-

---

[12]Our decision in *Papadopoulos* was released on July 26, 2010, ten days after judgment entered on the jury verdict in this case.

[13]It is for substantially the same reasons that the defendants' citation to *Thorson* v. *Mandell*, 402 Mass. 744, 749 (1988), is inapposite. In that case, this court held that the owner of an auditorium had no duty to warn an actress using the auditorium to rehearse a production against the dangers of performing a back flip on stage. The defendants specifically rely on that court's statement that the "dangers of attempting an unfamiliar backflip on a hard wood floor are obvious as a matter of law" in support of their argument for no duty. *Id.* However, the defendants neglect to reference the very next paragraph, which begins: "The condition that caused [the plaintiff's] injury was not created by the [the defendant]," or the court's observation that the plaintiff "[made] no claim before us . . . that the [defendant's] auditorium was not in reasonably safe condition." *Id.* at 747-748, 749. When read in the proper context, the *Thorson* case is clearly distinguishable from the present case.

low end, a deep end, and a diving board installed in the deep end.[14] *O'Sullivan*, *supra* at 202-203. Put another way, there was nothing about the design of the pool in *O'Sullivan* that expressly facilitated and invited dangerous misuse. Because the only possible theory of liability was a negligent failure to warn, the negation of the duty to warn by operation of the open and obvious danger rule therefore negated any duty of care in that particular case. Accordingly, we find *O'Sullivan* to be distinguishable from the present case.

"While the open and obvious doctrine may relieve the defendant of its duty to warn, the doctrine does not mean that the defendant can maintain its property 'in an unreasonably unsafe condition as long as the unsafe condition is open and obvious.' " Godsoe *vs.* Maple Park Props., Inc., *supra*, quoting Martins *vs.* Healy, *supra*. Here, Jose set up a trampoline immediately adjacent to a two-foot-deep pool, with a ladder leading directly from the pool to the trampoline, for the very purpose of enabling people to jump from the trampoline into the pool. He knew that the pool warned against jumping of any kind, and he knew that the setup was dangerous[15] but proceeded with the setup because he thought it would be "fun." In many ways, Jose's actions were equivalent to installing a diving board in the shallow end of an in-ground pool. The danger from using a diving board in the shallow end of an in-ground pool would be open and obvious, but a defendant who installs or maintains the diving board in this manner would surely have reason to anticipate that persons would use the board to propel themselves into the water despite the danger. Far from failing to warn users not to jump or dive into the shallow pool — which, standing alone, would not give rise to liability — Jose actively facilitated this improper and highly dangerous use. And while the defendants make much of the fact that the plaintiff attempted a front flip (or, as they variously suggest, a dive) into the pool, whereas Jose only intended for people to "jump" from the trampoline to the pool, this

---

[14]The court noted the absence of markers indicating the depth of the pool, but given the various characterizations throughout the opinion of the plaintiff's theory of negligence, this fact is best understood as being advanced in support of the plaintiff's duty to warn claim. See *O'Sullivan*, *supra* at 202.

[15]Maria also knew that the setup was dangerous.

assertion misses the point. Even assuming the jury interpreted the defendants' testimony that the setup was intended to facilitate "jumping" to mean that the defendants did not anticipate anyone would attempt to flip or dive into the pool,[16] "[t]o be held liable the defendant need not have foreseen the precise manner in which the injuries occurred." *Luz* v. *Stop & Shop, Inc., of Peabody*, 348 Mass. 198, 204 (1964). See *Moose* v. *Massachusetts Inst. of Tech.*, 43 Mass. App. Ct. 420, 425 (1997), quoting Restatement (Second) of Torts, *supra* at § 435(1).[17] Given the shallow depth of the water, there was no reliably safe way to propel oneself from the trampoline into the pool.[18] The defendants

---

[16]The defendants' testimony on this point was generally that Jose set up the trampoline next to the pool for the purposes of enabling people to "jump" from the trampoline to the pool, and that both defendants observed persons "jumping" from the trampoline into the pool and knew the setup was being used in this manner despite the danger. There was no testimony regarding what exactly the defendants meant by "jumping" or whether they believed persons would attempt to flip or dive into the pool, but it is clear that the defendants knew that persons were propelling themselves from the trampoline into the pool and that they knew this activity was dangerous. The plaintiff, however, testified that he specifically observed multiple people "flip[ping]" into the pool.

[17]Although the cited cases and section from the Restatement (Second) of Torts discuss foreseeability of the precise manner or extent of an injury in terms of establishing proximate cause, not duty, the concept is equally applicable here, where the existence of a duty turns on whether the defendant can and should anticipate physical harm resulting from the open and obvious danger. See *Quinn*, *supra* at 55 n.6, citing *Whittaker* v. *Saraceno*, 418 Mass. 196, 198-199 (1994) (noting "concept of 'foreseeability' is used to define the limits of a duty of care as well as the limits of proximate cause").

[18]It has been suggested that there is no fundamental difference between jumping off the trampoline and landing feetfirst on the ground, and jumping off the trampoline and landing feetfirst in two feet of water. We disagree. As an initial matter, there was no evidence adduced at trial regarding whether the trampoline manufacturer warned against jumping (or, more accurately, bouncing) directly from the trampoline onto the ground, and the jury were not asked to consider the reasonableness of doing so. However, Jose did testify that he disregarded the advice of the person who gifted the trampoline to his son, who told Jose that he should purchase a safety net designed to surround the trampoline. Such a safety net presumably would have prevented anyone from jumping off the trampoline, whether it be into the pool or onto the ground. In any event, regardless of the propriety or advisability of jumping from the trampoline with the intention of landing feetfirst on the ground, there is a discernible difference between that activity and the act of jumping feetfirst into a vinyl pool filled with two feet of water that specifically warned its users against jumping of any kind.

knew that it was unsafe to do so and, therefore, could or should have anticipated injuries resulting from this activity.

On these facts, a jury were entitled to conclude that the defendants owed a duty of care — specifically a duty to remedy — despite the open and obvious nature of the danger. Accordingly, the judge erred in instructing the jury to cease deliberations if they concluded that the danger was open and obvious, and should have further instructed the jury that a landowner is not "relieved from remedying open and obvious dangers where he [or she] 'can or should anticipate that the dangerous condition will cause physical harm to the [lawful entrant] notwithstanding its known or obvious danger.' " *Soederberg, supra* at 338, quoting Restatement (Second) of Torts, *supra* at § 343A comment f.

c. *Requested special question.* Having established that the jury's determination that the danger created by the trampoline and pool was open and obvious was not dispositive of the defendants' duty of care, and that the judge should have further instructed the jury regarding the duty to remedy, the judge should have posed a special question to the jury directing them to determine whether, as a matter of fact, the defendants reasonably could and should have anticipated that someone would be injured as a result of jumping from the trampoline into the pool. Therefore, while there was nothing wrong with special question no. 1 as posed by the judge in that it asked the jury to determine whether the danger was open and obvious, the judge should have posed some form of the plaintiff's requested special question, see *supra* at note 9, as special question no. 2, allowing the jury next to determine whether the defendants reasonably could and should have anticipated that lawful entrants would jump from the trampoline to the pool causing injury despite the open and obvious danger of doing so.

4. *Conclusion.* Based on the foregoing analysis, we conclude that the trial judge's failure to give the plaintiff's requested instruction affected his substantial rights.[19] Accordingly, we set aside the verdict and remand the case to the Superior Court for

---

[19]The defendants do not dispute that any error was indeed prejudicial to the plaintiff.

a new trial with directions to the trial judge to instruct the jury in a manner consistent with this opinion.[20]

*So ordered.*

---

[20]The liability analysis does not end here. Even if, on remand, the defendants are found to have owed and committed a breach of a duty of care, the plaintiff's damages would be reduced by his comparative negligence and his recovery would be barred altogether if he were found to be more than fifty per cent at fault. G. L. c. 231, § 85. However, Bryan Coleta and Keila Coleta would still be entitled to recover for any loss of consortium. See *Morgan* v. *Lalumiere*, 22 Mass. App. Ct. 262, 271-272 (1986), citing *Feltch* v. *General Rental Co.*, 383 Mass. 603, 606-610 (1981).